SPIVEY, and another, Plaintiffs, v. GREAT ATLANTIC & PACIFIC TEA COMPANY, Defendant and Third-Party Plaintiff-Appellant: MILWAUKEE DRESSED BEEF COMPANY, Third-Party Defendant-Respondent: SECURITY INSURANCE COMPANY, and another, Third-Party Defendants.

*No. 75–626. Submitted on briefs June 2, 1977.—*
*Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 469.)

60

For the appellant the cause was submitted on the brief of *Jack R. Wiedabach, Douglas H. Starck* and *Prosser, Wiedabach & Quale, S. C.* of Milwaukee.

For the respondent the cause was submitted on the brief of *Paul E. Prentiss* and *Levin, Blumenthal, Herz & Levin, S. C.* of Milwaukee.

HEFFERNAN, J. The appeal is from a summary judgment, which dismissed a third-party complaint brought by the Great Atlantic & Pacific Tea Company against the Milwaukee Dressed Beef Company. The underlying action was commenced by Jimmie Spivey and his wife against the Great Atlantic & Pacific Tea Company as the result of a fall sustained by Spivey at the A & P warehouse in Milwaukee, to which he was making a delivery as an employee of Milwaukee Dressed Beef.

Although the principal action is not before us, it is apparent from the record that Spivey alleged that the

A & P premises were slippery and hazardous as the result of A & P's negligence in washing down the loading dock. A & P interpleaded Milwaukee Dressed Beef, claiming that it had a contract of indemnification with Milwaukee Dressed Beef, whereby that company agreed to indemnify A & P for any damages it might sustain as a result of the presence of Dressed Beef employees on the A & P premises.

The trial judge found that the original indemnification agreement did not expressly cover liability for the negligence of A & P, the indemnitee, and therefore it was inapplicable to this action where the pleadings showed that Spivey's injuries were the result of A & P's negligence. He also concluded that an alleged oral modification of the original indemnity agreement was ineffective. He accordingly granted summary judgment. We affirm.

We conclude that a motion for summary judgment was appropriate to this case. Because the affidavits for summary judgment submitted by Dressed Beef were not countered by any affidavits submitted by A & P, no facts material to the resolution of this portion of the action are in dispute.

Milwaukee Dressed Beef in its affidavits recited provisions of a written indemnification agreement entered into between A & P and Dressed Beef on November 2, 1960. Dressed Beef's affidavits also recited the allegations of A & P's complaint in respect to an alleged ratification or modification of the original indemnification agreement. A supplemental affidavit submitted by Dressed Beef recited testimony from a deposition which purported to show that the proximate cause of Spivey's injury was A & P's negligence in cleaning the loading area where Spivey fell and sustained his injury.

Because these affidavits were not countered in any way, the facts are undisputed. Given the allegation of A & P's negligence, only a legal question is presented—

the effect of the indemnity agreement and the effect of the alleged modification or ratification of it. The action was in a proper posture for disposition on summary judgment.

The original indemnification agreement is recited in Exhibit A attached to Dressed Beef's affidavits. That agreement provides as follows:

"In the event any of our [Milwaukee Dressed Beef Company] representatives or those of our subsidiaries, affiliates, Divisions and Units are permitted to visit any A&P store, in consideration of such permission we hereby agree to indemnify and save you harmless from any loss or liability arising in any manner out of the presence of our representatives on any part of the premises of A&P stores."

Additionally, Dressed Beef's affidavits incorporated a portion of A & P's complaint, wherein A & P recited:

" 'On or about February 8, 1973, the Milwaukee Dressed Beef Company ratified the indemnification agreement and agreed that it was intended to take care of just such a situation as had occurred here.' "

Dressed Beef further recited in its affidavits that the purported ratification was not in writing and was an oral statement made by an agent or employee of Dressed Beef.

Accordingly, the only issues are those identified by the trial judge: Whether given the fact that the basis of the cause of action was the negligence of A & P, the original indemnification agreement was sufficient to accord A & P, the indemnitee, indemnity for injuries occasioned by its own negligence, and whether the subsequent oral communication modified the original agreement in some way that A & P would be entitled to indemnification by virtue of the alleged subsequent agreement if not by operation of the original agreement.

The general rule accepted in this state and elsewhere is that an indemnification agreement will not be construed to cover an indemnitee for his own negligent acts absent a specific and express statement in the agreement to that effect. As Prosser states, *Torts* (4th ed.), sec. 51, p. 310, n. 90:

"A contract agreeing to indemnify a party against the consequences of his own negligence is not against public policy. . . . But such a construction will not be put upon a contract unless it is very clearly intended."

The same proposition has been recently restated in *Bialas v. Portage County*, 70 Wis.2d 910, 236 N.W.2d 18 (1975). Therein we said:

"This court has consistently upheld the validity of indemnity contracts. *Herchelroth v. Mahar* (1967), 36 Wis.2d 140, 153 N.W.2d 6; *Mustas v. Inland Construction, Inc.* (1963), 19 Wis.2d 194, 120 N.W.2d 95, 121 N.W.2d 274. Such agreements are liberally construed when they deal with the negligence of the indemnitor, but are strictly construed when the indemnitee seeks to be indemnified for his own negligence." (at 912)

In cases such as the instant one, where the indemnitor, Dressed Beef, is itself free of negligence, the obligation to indemnity an indemnitee for its own negligence must be clearly and unequivocally expressed in the agreement. General language will not suffice. A & P correctly asserts that, nevertheless, a strict construction of an indemnification agreement cannot be used to defeat the clear intent of the parties. If the agreement clearly states that the indemnitee is to be covered for losses occasioned by his own negligent acts, the indemnitee may recover under the contract. Additionally, if it is clear that the purpose and unmistakable intent of the parties in entering into the contract was for no other reason than to

cover losses occasioned by the indemnitee's own negligence, indemnification may be afforded.

In *Herchelroth v. Mahar*, 36 Wis.2d 140, 153 N.W.2d 6 (1967), this court construed an indemnification agreement drawn in general language between a lessor and lessee as intending to protect the indemnitee for its own negligent acts. In that situation, however, it was clear from the record, in view of the relationship of the parties, that no other purpose could be served by the agreement other than to protect the "respondent's [indemnitee's] responsibility for his negligent acts." *Herchelroth* at 146.

In *Hastreiter v. Karau Buildings, Inc.*, 57 Wis.2d 746, 205 N.W.2d 162 (1973), the court also held that it was the intent of the parties to hold the indemnitee harmless even though he were negligent, because, in that case too, explicit in the overall contract there was the provision that there be public liability insurance which was intended to protect the indemnitee, the landlord, from the effects of his own negligence.

In the instant case, it is apparent that nothing in the indemnity agreement specifically purports to protect A & P in the event of damages sustained by its negligence. Nor, unlike *Herchelroth* and *Hastreiter*, is the only reasonably inferable purpose of the agreement the indemnification of the indemnitee for his own negligence. The agreement here can be construed most reasonably to indemnify A & P against injuries or property damage sustained, while Dressed Beef's employees were on A & P's premises, when the negligence occasioning the damage was that of Dressed Beef or of third parties. Hence, the indemnification agreement here has a clear purpose other than that of indemnifying A & P against the consequences of its own negligence. The rationale of *Herchelroth* and *Hastreiter* is, therefore, inapplicable and the agreement must be strictly construed. As so construed, it does not

permit A & P to be indemnified by Dressed Beef for the consequences of A & P's own negligence.

In the trial court, A & P also argued that an oral statement made by a Dressed Beef employee on February 8, 1973—nine months after Spivey's injury—modified the original agreement and, therefore, had the effect of permitting indemnification. The statement relied upon by A & P appears in its complaint and is incorporated in Dressed Beef's affidavits for summary judgment:[2]

"[T]he Milwaukee Dressed Beef Company ratified the indemnification agreement and agreed that it was intended to take care of just such a situation as had occurred here."

The trial court held that this oral statement was ineffective for three reasons: That there was no showing that this statement was made with the intent to modify the original agreement; that no additional consideration was provided in support of the modified contract; and that the statement was merely an expression of opinion. Each of these grounds relied upon by the trial judge was clearly correct under the state of facts revealed by the affidavits for summary judgment.

On appeal it appears that A & P has abandoned its earlier position that the oral statement of February 8, 1973, modified the original agreement and now asserts that that statement was a re-affirmation of the intent with which the parties entered into the original contract. We think this contention untenable. Spivey was injured on May 25, 1972; and, as stated above, the liability of Dressed Beef to indemnify A & P was dependent upon the strict construction of the original agreement dated November 2, 1960. Any rights of indemnification that A & P had were fixed at the date of the accident by prior agreement.

---

[2] Dressed Beef, while admitting that someone made the statement, denies that it had the legal effect claimed by A & P.

It is apparent that the subsequent statement does not purport to modify the original agreement and the doctrine of ratification is inapplicable, for a ratification is a manifestation of an intent to become a party to a transaction purportedly done on the ratifier's account. See, *Estate of Alexander,* 75 Wis.2d 168, 248 N.W.2d 475 (1977). It does not change the effect or intent of the original agreement, but merely binds a party to a prior agreement which failed to bind such party. A ratification does not modify or change the terms or intention of the original agreement in other respects.

The indemnification agreement entered into between A & P and Dressed Beef on November 2, 1960, must be strictly construed; and as so construed, A & P, as the indemnitee, is precluded from any recovery against Dressed Beef for loss occasioned by its own acts of negligence. The agreement was neither modified, altered, nor ratified by the subsequent oral statement purportedly given by an unnamed employee of Dressed Beef nine months after the accident.

*By the Court.*—Judgment affirmed.