Gilane C. SERSTED, Plaintiff,

v.

**AMERICAN CAN COMPANY, a New Jersey corporation, Defendant,**

**MIDLAND–ROSS CORPORATION, an Ohio corporation, Midro Ltd., a foreign corporation, Northbrook Excess and Surplus Ins. Co., (Northbrook Ins. Co.), a foreign corporation, Harbor Insurance Company, a foreign corporation, Defendants, Third-Party Plaintiffs, and Cross-Claimants,**

v.

**ZURN INDUSTRIES, INC., Clarage Fan Division, a Pennsylvania corporation, Third-Party Defendant.**

No. 79–C–182.

United States District Court, E. D. Wisconsin.

March 22, 1982.

---

Jean Seaburg, Robert L. Habush, Habush, Habush & Davis, Milwaukee, Wis., for Sersted.

James R. Clark, Ronald M. Wawrzyn, Foley & Lardner, Milwaukee, Wis., for Midland-Ross Corp.

Thomas L. Smallwood, Borgelt, Powell, Peterson & Frauen, Milwaukee, Wis., for American Can Co.

John M. Swietlik, Kasdorf, Dall, Lewis & Swietlik, Milwaukee, Wis., for Zurn Industries, Inc.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On February 14, 1979, plaintiff filed an action in the Circuit Court of the State of Wisconsin in and for the County of Milwaukee seeking to recover damages for injuries she suffered during the course of her employment for defendant American Can Company (American). Plaintiff was injured on August 14, 1978 while working on a can-drying oven which had been sold to American by defendant Midland-Ross Corporation (Midland-Ross) in 1968. On March 19, 1979, Midland-Ross filed a petition for removal in this Court. On March 29, 1979, plaintiff filed a motion for remand. That motion was denied in an order dated May 14, 1979.

On March 11, 1980, Midland-Ross and its insurers filed a third-party complaint against Zurn Industries, Inc., Clarage Fan Division, the corporation which designed, fabricated, manufactured and sold to Midland-Ross a fan component used in the can-drying oven sold by Midland-Ross to American.

Four motions are currently pending before the Court. First, Midland-Ross seeks an order granting it summary judgment against American based on an indemnification agreement contained in Midland-Ross' formal proposal for sale. Second, Midland-Ross seeks an order compelling the production of certain statements taken by plaintiff's investigator and American Can's insurance adjuster. Third, Midland-Ross seeks an order extending the time by which it must complete plaintiff's deposition until thirty (30) days after the plaintiff's last surgical procedure. Fourth, the plaintiff seeks an order allowing her to enter into a Pierringer agreement with Zurn Industries, Inc., Clarage Fan Division, so as to obtain the effect of dismissing Clarage Fan from this lawsuit. These motions are the subject of this memorandum and order.

### I. *Motion for Summary Judgment*

On October 2, 1968, Midland-Ross submitted a formal proposal to American for a can-drying oven. Included in that proposal

was the following indemnification agreement:

> Buyer shall use and shall require its employees to use all safety devices, guards, and proper safe operating procedures as set forth in manuals and/or instruction sheets furnished by Seller. Buyer shall not remove or modify any such device or guard or warning sign. During operation and especially when readjusting the equipment to accommodate new and different materials in process or when experimenting with new materials, Buyer shall not permit any person other than knowledgeable and skilled operating personnel to remain within 10 feet of any machine or accessory manufactured by Seller. If Buyer fails to strictly observe each and every one of the obligations set forth in this paragraph with regard to any of Seller's products, Buyer agrees to indemnify and save Seller harmless from any liability or obligation incurred by Seller to persons injured directly or indirectly in connection with the operation of such products. Buyer shall notify Seller promptly, and in any event within 30 days, of any accident or malfunction involving Seller's products which result in personal injury or damage to property and shall cooperate fully with Seller in investigating and determining the cause of such accident or malfunction. In the event that Buyer fails to give such notice to Seller and so cooperate, Buyer agrees to indemnify and save Seller harmless from any claims arising from such accident or malfunction.

On October 29, 1968, American accepted the Midland-Ross proposal with a purchase order which expressly incorporated the Midland-Ross proposal, including the indemnification provision. These two documents formed the purchase contract, which the parties agreed would be governed by Ohio law.

It is Midland-Ross' contention that the undisputed facts, as developed through deposition testimony, show that American Can failed to comply with three of the provisions of the indemnification agreement. Specifically, Midland-Ross claims American failed to comply with the provisions which: permitted only knowledgeable and skilled operating personnel to remain within ten feet of the oven; required American employees using the machine to use all safety devices, guards and proper safe operating procedures as set forth in manuals and/or instruction sheets furnished by Midland-Ross; and required American to notify Midland-Ross promptly, and in any event within 30 days, of any accident involving the oven, and to cooperate fully with Midland-Ross in investigating and determining the cause of the accident. The Court will discuss these provisions seriatim.

## A. The Skilled-Employee Provision

Midland-Ross contends American Can failed to comply with the skilled-employee provision of the parties' indemnification agreement because at the time of the accident, plaintiff was only twenty years old and had less than one year total work experience at American. In support of its contention that plaintiff was unskilled, Midland-Ross discusses in detail plaintiff's work history, the tasks she usually performed and her limited experience on the ceiling oven.

American Can, of course, contends plaintiff did have the proper training to perform the task of clearing jams in ovens. It also discusses in detail her work history and the tasks she usually performed.

Summary judgment is appropriate only if it appears that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fitzsimmons v. Best*, 528 F.2d 692, 694 (7th Cir. 1976); Fed.R.Civ.P. 56(c). All doubts as to the existence of an issue of material fact must be resolved against the movant. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 577 (7th Cir. 1961). In passing on a motion for summary judgment, the trial court may only determine whether or not there exists a dispute as to a material issue of fact. It is not permitted to resolve that dispute. *Carter v. Williams*, 361 F.2d 189, 194 (7th Cir. 1966).

The briefs submitted by the parties on this issue lead the Court to conclude that a genuine issue of fact pertaining to plaintiff's knowledge and skills exists. Because the resolution of this issue calls for resolution of factual matters, summary judgment on this ground is not appropriate.

B.  The Safety Manual Provision

The provision of the indemnification agreement pertaining to safety precautions to be taken by American Can states:

> Buyer shall use and shall require its employees to use all safety devices, guards and proper safe operating procedures as set forth in manuals and/or instruction sheets *furnished by Seller.* (Emphasis added.)

Although Midland-Ross has not shown that it ever furnished American Can with any safety manuals or instruction sheets, it contends summary judgment is appropriate because at the time of the accident plaintiff was violating two safety procedures set forth in American Can's own safety manual.

■ The Court finds this contention meritless. The safety manual provision relates solely to manuals or instruction sheets *furnished by Midland-Ross.* Therefore, that plaintiff may have been violating safety provisions set forth in American Can's corporate manuals is irrelevant to the issue of indemnification.

C.  The Notice Provision

The provision of the indemnification agreement pertaining to notice of accident states:

> Buyer shall notify Seller promptly, and in any event within 30 days, of any accident or malfunction involving Seller's products which result in personal injury or damage to property and shall cooperate fully with Seller in investigating and determining the cause of such accident or malfunction. In the event that Buyer fails to give such notice to Seller and so cooperate, Buyer agrees to indemnify and save Seller harmless from any claims arising from such accident or malfunction.

In its brief in opposition to Midland-Ross' motion for summary judgment, American Can acknowledges it never officially notified Midland-Ross of plaintiff's accident in writing. Notwithstanding this failure to comply with the indemnification agreement requirement, American Can contends the motion of summary judgment should be denied because it was unaware of the notice provision until 1980. According to American Can, it has a policy of destroying all records after a period of seven years. Consequently, the 1968 proposal containing the notice provision was destroyed long ago. American further asserts that it was only because a bookkeeper at the Milwaukee American Can Company Plant kept some records for herself that the original documents were located and produced in 1980.

■ Whether American Can destroyed its documents or not is irrelevant to the enforceability of the notice requirement. American Can agreed to notify Midland-Ross of any accident involving the oven within thirty (30) days of the accident, and its failure to do so cannot be excused by its own recordkeeping practices.

■ American Can also contends it was not necessary for it to comply with the notice provision because Midland-Ross was sued at the same time American Can was sued. The Court finds this argument meritless. A notice provision such as the one contained in the indemnification agreement is similar to notice of breach provisions in that it provides two distinct functions. First, express notice opens the way for settlement through negotiation between the parties. Second, proper notice minimizes the possibility of prejudice to the seller by giving him ample opportunity to investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties. *Standard Alliance Ind. v. Black Clawson Co.,* 587 F.2d 813 (6th Cir. 1978).

Having rejected American Can's reasons for failing to comply with the notice re-

quirement, the Court must now address American Can's contention that the indemnification agreement is invalid, presently unenforceable and against public policy.

In Wisconsin, by virtue of the Workmen's Compensation Act, an employer's liability to his injured employee is limited to the liability imposed by the Act. Wis.Stat. § 102.03. The Wisconsin Supreme Court has, however, recognized that the rule of no liability of the employer over and above that imposed by the Workmen's Compensation Act does not apply in case of an *express* agreement for indemnification. *See, Hintz v. Darling Freight, Inc.*, 17 Wis.2d 376, 117 N.W.2d 271 (1962); *Huck v. Chicago, St. P., M. & O.R. Co.*, 5 Wis.2d 124, 92 N.W.2d 349 (1958).

In interpreting express indemnification agreements, the Wisconsin Supreme Court has applied different rules of construction depending on the nature of the indemnification alleged. Where the indemnitor merely contracts to indemnify another against his own acts, the court has interpreted the agreement broadly. *Algreen v. Nowland*, 37 Wis.2d 70, 154 N.W.2d 217 (1967). However, where it is contended that the indemnity contract covers the negligent acts of the indemnitee as well, the Wisconsin Supreme Court has applied a strict rule of construction. *See e.g., Spivey v. Great Atlantic & Pacific Tea Co.*, 79 Wis.2d 58, 255 N.W.2d 469 (1976); *Bialas v. Portage County*, 70 Wis.2d 910, 236 N.W.2d 18 (1975); *Baker v. McDel Corp.*, 53 Wis.2d 71, 191 N.W.2d 846 (1971); *Mustas v. Inland Construction*, 19 Wis.2d 194, 120 N.W.2d 95 (1963). To impose liability on the indemnitor for the indemnitee's acts of negligence, Wisconsin courts require an express statement to that effect. General language will not suffice. *Spivey* 79 Wis.2d at 63, 255 N.W.2d 469.

In the case at bar, the indemnity agreement does not contain an express statement that Midland-Ross is to be indemnified against liability arising from its own negligence. It simply states that American Can "agrees to indemnify and save Seller [Midland-Ross] harmless from any liability or obligation incurred by" Midland-Ross. Although the phrase "any liability" impliedly includes negligence of the indemnitee, this general language is not sufficient under Wisconsin's rule of strict construction. *See e.g., Spivey v. Great Atlantic & Pacific Tea Co.*, 79 Wis.2d at 62, 255 N.W.2d 469 ("liability arising in any manner"); *Hastreiter v. Karau Buildings, Inc.*, 57 Wis.2d 746, 748, 205 N.W.2d 162 (1973) ("any liability arising out of the occupance of said leased premises"). Consequently, were the Court to apply Wisconsin law, American Can's failure to comply with the notice provision would not result in total indemnification of Midland-Ross by American Can.

Midland-Ross does not address the issue of liability under Wisconsin law when two parties have signed an indemnification agreement containing broad general language. Rather, it contends this Court must apply Ohio law in interpreting the indemnification agreement because the purchase contract states:

> The rights and duties of all persons, and the construction and effects of all provisions of this proposal and any resulting order, shall be governed by and construed in accordance with the laws of the State of Ohio.

Midland-Ross further contends that Ohio courts and federal courts interpreting Ohio law have held that broad general language, such as that contained in the indemnification clause at issue, covers both the indemnitee's and indemnitor's negligence.

The Court has reviewed the case cited by Midland-Ross in support of its contention that the phrase "any liability" would be construed under Ohio law to include negligence attributable to an indemnitee. The decisions relied upon by Midland-Ross support its position. *See e.g. D'Onofrio v. Sun Life Oil Co.*, 277 F.2d 543 (6th Cir. 1960); *General Accident Fire & Life Assurance Corp. v. Smith and Oby Co.*, 272 F.2d 581 (6th Cir. 1959); and *Central National Bank of Cleveland v. Gallagher*, 13 Ohio App.2d 115, 234 N.E.2d 524 (1968). In each of the cited decisions, courts construing Ohio law held that broad general language of an

indemnification agreement was effective to cover an indemnitee's own negligence.

Relying on a 1975 change in Ohio law, American Can argues that Ohio law now condemns indemnification agreements as being against public policy. Specifically, American Can relies on R.C. 2305.31 which provides:

A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alteration, repair or maintenance of a building structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee, or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnity the promisee, its independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury to persons or damage to property initiated or proximately caused by or resulting from the negligence of the promisee, its independent contractors, agents, employees or indemnitees, is *against public policy and is void.* (Emphasis added). Nothing in this section shall prohibit any person from purchasing insurance from an insurance company authorized to do business in the State of Ohio for his own protection or from purchasing a construction bond.

Midland-Ross contends section 2305.31 is applicable only to construction contracts and, therefore, is irrelevant to the case at bar. It also contends that the 1975 law cannot be applied retroactively to invalidate the 1968 indemnification agreement between American Can and Midland-Ross.

The Court agrees with Midland-Ross that section 2305.31, by its express terms, applies only to construction contracts and, therefore, is not directly applicable to the case at bar. The Court cannot ignore, however, the apparent change in the Ohio legislature's attitude toward indemnification agreements evinced by the enactment of the law;

unquestioned acceptance of indemnification agreement is no longer commonplace in Ohio.

Because neither party has cited any post 1975 cases addressing the public policy considerations of indemnification agreement under Ohio law, this Court cannot say with certainty whether an Ohio court would recognize the indemnification agreement between the parties. However, assuming arguendo that a court construing this agreement under Ohio law would allow Midland-Ross to escape liability for its own negligence, this Court would and does consider such a result to be contrary to the fundamental public policy of Wisconsin in limiting an employer's liability under the Workmen's Compensation laws. Therefore, the Court will apply Wisconsin law.

▆▆ Under Wisconsin law, the parties to a contract may expressly agree that the law of a particular jurisdiction shall control their contractual relations. *Jefferis v. Austin*, 182 Wis. 203, 196 N.W. 238 (1923). The question of choice of law governing the validity and interpretation of contract is, absent fraud, basically a question of the intention of the parties. *Estate of Knippel*, 7 Wis.2d 335, 96 N.W.2d 514 (1959). The Wisconsin policy of allowing the intention of the parties to determine the law applicable to contractual relations is in accord with the generally accepted rule, Restatement (Second) Conflict of Law § 187 (1958); *First Wisconsin National Bank of Madison v. Nicolaov*, 85 Wis.2d 393, 270 N.W.2d 582 (1978), appeal dismissed 87 Wis.2d 360, 274 N.W.2d 704 (1979).

The Restatement (Second) of Conflict of Laws § 187 states that a choice of law made by the parties will be honored unless:

1. The chosen state does not have a substantial relationship to the parties; nor is there a reasonable basis for choosing that particular state law; or

2. Application of the chosen state's law would be contrary to the public policy of the state whose law would normally apply absent an express choice by the parties.

The Court is satisfied that Ohio has a substantial relationship to the parties and that the parties had a reasonable basis for choosing Ohio law. Therefore, the issues the Court must resolve are whether the application of Ohio law would be contrary to a fundamental policy of Wisconsin and whether Wisconsin has a materially greater interest than Ohio in the determination of this issue.

In enacting the Workmen's Compensation laws, the Wisconsin Legislature intended to provide financial and medical benefits to the victims of "work-connected" injuries and their families, regardless of fault, and to allocate the financial burden to the most appropriate source, the employer, and ultimately the consumer of the product. *Brenne v. ILHR Department*, 38 Wis.2d 84, 156 N.W.2d 497 (1968). In order to fulfill this intention, the legislature departed from the common law rules of negligence and placed absolute liability on an employer for injuries suffered by his employees. However, by virtue of its absolute liability, an employer receives some benefits too because its liability is limited to that imposed by the Act unless it expressly agrees to indemnify another party. The establishment of this system of compensation obviously serves a fundamental state interest because it both ensures fair recovery by employees for their injuries and recognizes the importance of limiting the liability of a person or corporation providing jobs for the people of the state.

Because the Ohio courts have adopted the same rule of strict construction that Wisconsin courts have in construing indemnification agreements, it would appear at first glance that there would be no problem in applying Ohio law to the case at bar. However, as the cases cited by Midland-Ross demonstrate, the Ohio courts and Wisconsin courts have applied their respective "strict" rules differently; Ohio courts have held that very broad language is sufficient to require indemnification, while Wisconsin courts have held that very broad language cannot serve as a basis for requiring indemnification.

This Court interprets the Wisconsin rule of strict construction as one tailored to meet the goal of limiting an employer's liability under the Workmen's Compensation Act. Because the Ohio rule of strict construction does not comport with this goal, the Court finds it in fundamental conflict with the Workmen's Compensation Act. Furthermore, because the State of Wisconsin's interests in determining the application of its own Workmen's Compensation Act are materially greater than Ohio's interests, this Court will follow Wisconsin law and reject Midland-Ross' contention that the indemnification agreement indemnifies it for all liability.

In rejecting Midland-Ross' contention that the indemnification agreement releases it from all liability, the Court does not totally reject the indemnification agreement. Rather, it interprets the agreement as one releasing Midland-Ross from liability for damages attributable to American Can's negligence.

Finally, the Court has considered American Can's other arguments attacking the validity of the indemnification agreement in its entirety and finds them meritless. Therefore, in the event Midland-Ross and American Can are found liable at trial for plaintiff's injuries, Midland-Ross will be liable for damages attributable to its own negligence.

## II. *Motion to Compel*

In its motion to compel, Midland-Ross requests an order compelling the production of certain statements taken by plaintiff's investigator and American Can's insurance adjuster. Specifically, Midland-Ross seeks: (1) statements taken by plaintiff's investigator of William Dietz and George Schultz, two eyewitnesses to plaintiff's accident; (2) unidentified statements taken by American Can's worker's compensation carrier; and (3) unidentified statements taken by plaintiff's investigator. Plaintiff opposes the motion. American Can has filed no response to the motion.

Plaintiff argues that it should not be ordered to produce the statements of Mr.

Dietz and Mr. Schultz because those statements are guarded by the attorney work-product privilege and because any prejudice Midland may incur as a result of not obtaining statements earlier is due to its own lack of diligence.

██ It is well accepted that statements taken by nonlawyer investigators under the direction of an attorney are considered initially as work product and that before ordering production of such statements, the trial court must determine if the party seeking production has shown "good cause" for production. *State ex rel. Dudek v. Circuit Court*, 34 Wis.2d 559, 595, 150 N.W.2d 387 (1967).

██ Because the investigator who obtained the statements from Mr. Dietz and Mr. Schultz was working with an attorney in anticipation of litigation, the Court agrees with plaintiff that the statements he obtained from the two eyewitnesses should be afforded initial protection under the attorney work product privilege. The Court also agrees with plaintiff that Midland-Ross has failed to show "good cause" for the production of the documents.

Plaintiff was injured on August 14, 1978. Plaintiff's investigator obtained Mr. Dietz's statement on January 23, 1979 and obtained Mr. Schultz's statement on August 15, 1979. Plaintiff's complaint was served on Midland-Ross on February 20, 1979, one month after the Dietz statement and six months before the Schultz statement. Under these circumstances, the Court rejects Midland-Ross' contention that the witnesses' "faded memories" establish good cause. Once it was served with the complaint, Midland-Ross was free to begin its own discovery, and any loss of memory occurring after that was due to its own actions. Accordingly, Midland-Ross' motion to compel production of the Dietz and Schultz statements is hereby denied.

██ With respect to Midland-Ross' request for statements taken by American Can's worker's compensation carrier, the Court agrees with Midland-Ross that an order compelling American Can to produce those statements in its possession which were taken by its worker's compensation carrier is appropriate. Because neither American Can nor plaintiff has set forth reasons against disclosure of these statements, the Court can only infer that no such reasons exist. Accordingly, American Can is hereby ordered to produce those statements in its possession which were taken by its worker's compensation carrier.

██ Finally, the Court rejects plaintiff's contention that Midland-Ross is not entitled to the names of all witnesses from whom statements have been taken. In order for Midland-Ross to prepare its defense it must be afforded the opportunity to explore its side of the controversy. Moreover, as the Wisconsin Supreme Court has noted, non-discovery of the names of witnesses could lead to sharp practices; persons whose testimony would be admissible could be hidden or never subjected to cross-examination. Therefore, plaintiff is hereby ordered to furnish Midland-Ross, within twenty (20) days from the date of this order, the names and addresses of all witnesses who have given it statements in connection with this action.

Having ordered plaintiff to furnish Midland-Ross with the names and addresses of all witnesses who have given statements to it, the Court need not order the actual production of the statements. The Court will not order the production of those statements unless Midland-Ross can show good cause for their production.

### III. *Motion to Extend Time to Take Plaintiff's Deposition*

In a letter dated April 14, 1981, the Court ordered Midland-Ross to finish deposing the plaintiff by July 1, 1981. On June 25, 1981, Midland-Ross filed a motion for an order extending the time for completing plaintiff's deposition from July 1, 1981 to August 1, 1981. Midland-Ross stated the extension was necessary because of scheduling difficulties with the plastic surgeon who was to examine plaintiff and the failure of plaintiff's counsel to make arrangements for plaintiff's examination until immediately prior to July 1. On June 29, 1981, plain-

tiff's counsel filed a motion in opposition to Midland-Ross' motion. Midland-Ross' counsel responded with a counter affidavit the same day.

On July 6, 1981, Midland-Ross informed the Court that its medical expert had finally examined plaintiff and had indicated that plaintiff would be undergoing more surgical procedures in the near future. Because it believes these medical procedures may lessen the extent of plaintiff's injuries, it asked the Court to extend to thirty (30) days after the last surgical procedure the time by which it must complete plaintiff's deposition. Plaintiff, of course, opposes such an extension.

Having examined the affidavits and letters exchanged by the parties, the Court is of the opinion that the open-ended extension Midland-Ross seeks could have the effect of eliminating all deadlines and delay considerably the trial in this matter. Moreover, because Midland-Ross will have access to plaintiff's updated medical reports, there is no need for extending the time to depose plaintiff.

The Court also recognizes, however, that Midland-Ross may not yet have completed the deposition of the plaintiff. Although it is beginning to appear to the Court that Midland-Ross is employing dilatory tactics to delay resolution of this action, the Court is also of the opinion that justice will best be served by allowing Midland-Ross a short time in which to complete its deposition of plaintiff. Accordingly, the Court hereby grants Midland-Ross' motion for an extension of time to complete its deposition of plaintiff and orders Midland-Ross to complete that deposition within twenty (20) days from the date of this order.

IV. *Motion Regarding Pierringer Release*

On November 6, 1980, John Swietlik, attorney for Zurn Industries, presented the Court with an agreement in which plaintiff agreed to indemnify and hold harmless Zurn for any amounts Zurn will or may be required to pay upon any judgment obtained against them by a joint tortfeasor to this action, or any other party, for contribution arising out of the damages claimed by her as a result of her August 14, 1978 accident. Acting upon Mr. Swietlik's representation that no party objected to the agreement, the Court approved the agreement.

On February 10, 1981, plaintiff filed a motion to vacate the November 6, 1980 order and asked the Court to issue an order allowing her to file a second amended complaint adding Zurn as a defendant. The purpose of her motion was to release Zurn as a defendant directly and to ensure that any release would be on behalf of plaintiff's worker's compensation carrier as well as herself.

On April 15, 1981, Zurn submitted a second proposed indemnification agreement. On April 20, 1981 Midland-Ross responded to Zurn's proposed order and suggested that an order approving the Pierringer Release contain hypothetical mathematic formulas establishing the potential liability of the various parties. In addition, it asked that Zurn not be relieved of the discovery obligations of a party.

The Court can see no reason for setting out hypothetical mathematic formulas in any order. The parties' respective liability can be established after the jury returns its verdict.

The Court also rejects Midland-Ross' suggestion that Zurn not be relieved of the discovery obligations of a party. Zurn has bought its peace with the plaintiff. Consequently, there is no reason to continue to burden it with the costs of establishing the liability of the remaining parties.

Based on the foregoing, the Court hereby grants plaintiff's motion to set aside the indemnification agreement signed by the Court on November 6, 1980 and, in addition, grants plaintiff's motion to file a second amended complaint. Plaintiff is to file its second amended complaint within fourteen (14) days of the date of this order. In addition, the Court rejects Midland-Ross' objections to the proposed indemnification order of April 14, 1981. Because Zurn has

proposed several proposed orders during the last year, the Court hereby orders Zurn to serve the Court and all counsel with new copies of its April 14, 1981 order within fifteen (15) days of the date of this order to ensure that the Court and all parties are aware of the provisions of that release. After the Court receives plaintiff's second amended complaint and Zurn's proposed Pierringer agreement, the Court will sign the order ending Zurn's involvement as an active party in this action.

### V. *Summary*

Based on the foregoing, the Court hereby ORDERS:

(1) Midland-Ross' motion for summary judgment releasing it from all liability in this action be and hereby is DENIED;

(2) Midland-Ross' motion to compel be and hereby is GRANTED in part and DENIED in part, as explained in this order;

(3) Midland-Ross' motion for an order extending the time within which it must depose plaintiff be and hereby is GRANTED;

(4) plaintiff Sersted's motion to set aside the indemnification order signed by the Court on November 6, 1980 be and hereby is GRANTED; and

(5) plaintiffs' Sersted's motion to file a second amended complaint be and hereby is GRANTED.

The Court will hold a pretrial conference at *9:00 A.M. on Friday, April 23, 1982.* The parties are to be prepared to discuss settlement at this time.