165 F.3d 561
 Roy D. SUTTON and Charlene Sutton, Plaintiffs-Appellees,
v.
A.O. SMITH COMPANY, Defendant/Third-Party-Plaintiff-Appellee,
v.
Q-1 Motor Express of Jeffersonville, Indiana,
Third-Party-Defendant-Appellant.
 No. 98-2563.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Nov. 17, 1998.
Decided Jan. 14, 1999.
 
 David G. Hatfield (submitted), Evansville, IN, Eric C. Young, Dunham, Boman & Leskera, Belleville, IL, for Plaintiffs-Appellees Roy D. Sutton and Charlene Sutton.
 Kathy A. Wisniewski, Bryan Cave, St. Louis, MO, for Defendant/Third-Party-Plaintiff-Appellee A.O. Smith Company.
 Jeffrey S. Hebrank, Burroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, IL, for Third-Party-Defendant-Appellant Q-1 Motor Express of Jeffersonville, Indiana.
 Before POSNER, Chief Judge, and COFFEY and DIANE P. WOOD, Circuit Judges.
 POSNER, Chief Judge.
 
 
 1
 A.O. Smith hired Q-1 Motor Express to transport goods for it to and from specified locations. Roy Sutton, a truck driver employed by Q-1, was injured by a forklift operated by an employee of A.O. Smith on property owned by A.O. Smith while Sutton was engaged in work called for by the contract between the two companies. Sutton and his wife (the latter seeking damages for loss of consortium) sued A.O. Smith, charging negligence, and A.O. Smith removed to federal district court under the diversity jurisdiction and impleaded Q-1, which it contends is obligated by their contract to indemnify it for all legal claims arising out of the performance of the contract, even claims based on A.O. Smith's own negligence. The Suttons settled with A.O. Smith for $17,000 and the judge then ordered Q-1 to indemnify A.O. Smith for this amount, precipitating this appeal by Q-1.
 
 
 2
 The contract specified that Wisconsin law would govern any disputes arising from the contract. Under that law, contractual indemnity provisions--unless, of course, they appear in an insurance contract, Harrah's Atlantic City, Inc. v. Harleysville Ins. Co., 288 N.J.Super. 152, 671 A.2d 1122, 1125 (N.J.Super.Ct.App.Div.1996); Pickhover v. Smith's Management Corp., 771 P.2d 664, 668 (Utah App.1989); Ervin v. Sears, Roebuck & Co., 127 Ill.App.3d 982, 82 Ill.Dec. 709, 469 N.E.2d 243, 249 (Ill.App.1984); see, e.g., Just v. Land Reclamation, Ltd., 155 Wis.2d 737, 456 N.W.2d 570, 573 (Wis.1990)--are presumed not to cover claims arising from the negligence of the party seeking indemnity (A.O. Smith, in this case). The presumption can be overcome by "a specific and express statement" that the indemnity does extend to such claims. Dykstra v. Arthur G. McKee & Co., 100 Wis.2d 120, 301 N.W.2d 201, 204 (Wis.1981); Spivey v. Great Atlantic & Pacific Tea Co., 79 Wis.2d 58, 255 N.W.2d 469, 472 (Wis.1977); see also Mustas v. Inland Construction, Inc., 19 Wis.2d 194, 120 N.W.2d 95, 101-02 (Wis.1963). This rule of interpretation is general rather than some Wisconsin sport, see Estey v. MacKenzie Engineering Inc., 324 Or. 372, 927 P.2d 86, 88-89 (Ore.1996); Johnson v. Board of County Commissioners, 259 Kan. 305, 913 P.2d 119, 136 (Kan.1996); National Hydro Systems v. M.A. Mortenson Co., 529 N.W.2d 690, 694 (Minn.1995); Ruzzi v. Butler Petroleum Co., 527 Pa. 1, 588 A.2d 1, 4 (Pa.1991); Washington Elementary School District No. 6 v. Baglino Corp., 169 Ariz. 58, 817 P.2d 3, 6 (Ariz.1991); Thornton v. Guthrie County Rural Electric Cooperative Ass'n, 467 N.W.2d 574, 576 (Iowa 1991), although the severity of its application differs from state to state. Northwest Airlines v. Hughes Air Corp., 104 Wash.2d 152, 702 P.2d 1192, 1194 (Wash.1985); compare Ethyl Corp. v. Daniel Construction Co., 725 S.W.2d 705 (Tex.1987), with Margolin v. New York Life Ins. Co., 32 N.Y.2d 149, 344 N.Y.S.2d 336, 297 N.E.2d 80 (N.Y.1973), and Washington Elementary School District No. 6 v. Baglino Corp., supra, 817 P.2d at 6. The rule is based on a belief that a contracting party is unlikely either to have good information about the propensity of the other party to behave negligently, or to be in a position to prevent such behavior, and so is unlikely to have agreed to insure the other party against the consequences of that party's negligence. Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982, 986 (La.1986). This presumption falls away if the party sought to be held as an insurer is an insurance company, whose business it is to insure people against liability based (usually) on their own negligence. Insurance companies are specialists in risk assessment and risk spreading; truck companies are not, though a diversified company, or even an undiversified company but one organized as a corporation and whose shareholders hold diversified portfolios, might be able to spread risk as well as an insurance company. And the truck company could shift any risk it agreed to shoulder by buying insurance. Still, courts consider it sufficiently unlikely that a firm would agree to insure its customer against the customer's own negligence that they require that the assumption of such a duty be clearly stated.
 
 
 3
 A.O. Smith argues, however, and the district judge found, that the contract with Q-1 contains just such a clear statement: "The Carrier [Q-1] is solely liable, and shall indemnify, hold harmless and defend shipper [A.O. Smith], from and against all claims involving bodily injury, property damage, and worker's compensation arising out of [or] in connection with its performance of the services under this Agreement, and shall maintain such liability, worker's compensation and other insurance coverage as may be reasonably acceptable to Shipper." Read literally, "all claims" would include claims based on the shipper's own negligence; but there is no mention of negligence, as there was in the Dykstra case, or of "liability arising in any manner," as in Spivey. See also Gunka v. Consolidated Papers, Inc., 179 Wis.2d 525, 508 N.W.2d 426, 428 (Wis.App.1993).
 
 
 4
 From what we have said so far, it may seem obvious that the district court was wrong to hold that Q-1 had agreed to indemnify A.O. Smith against the latter's own negligence. But it is not obvious, because of three Wisconsin decisions that are at least in superficial tension with the case law that we have been relying on. The first and least is Campion v. Montgomery Elevator Co., 172 Wis.2d 405, 493 N.W.2d 244, 249 (Wis.App.1992), which contains a dictum that might be read to imply that the term "solely liable" (which appears in the indemnity provision in the present case as well) is enough to create a duty to indemnify a party to an indemnity agreement for the consequences of the party's own negligence. The dictum of an intermediate state court is weak authority at best, especially when it is an unelaborated hint that if taken seriously would be contrary to settled doctrine that the court does not discuss. Indiana Harbor Belt R.R. v. American Cyanamid Co., 916 F.2d 1174, 1176 (7th Cir.1990); In re Pladson, 35 F.3d 462, 466 (9th Cir.1994).
 
 
 5
 Of greater moment are two decisions by Wisconsin's highest court which say that "hold harmless" language in an indemnity provision (language also found in the indemnity provision in the contract between A.O. Smith and Q-1) would have no function if it were not intended to embrace claims based on the negligence of the party seeking to be indemnified. Hastreiter v. Karau Buildings, Inc., 57 Wis.2d 746, 205 N.W.2d 162 (Wis.1973) (per curiam); Herchelroth v. Mahar, 36 Wis.2d 140, 153 N.W.2d 6, 8-10 (Wis.1967), both cited in Spivey v. Great Atlantic & Pacific Tea Co., supra, 255 N.W.2d at 472, which enunciates the clear-statement rule. In both cases, the provision was part of a lease; in Hastreiter, the lease required the lessee to pay for liability insurance and hold the lessor harmless for any liability arising out of the lessee's occupation of the leased premises. In Herchelroth, the reverse was true; the lease required the lessor to pay for the liability insurance and hold the lessee harmless. In both cases, the court was unwilling to treat the omission of the word "negligence" as fatal. Liability insurance invariably protects the insured against the consequences of his own negligence; that is its primary purpose, since ordinarily the insured would have no liability unless he was negligent. The issue in the two cases was merely who would pay. In the present case, the carrier assumed liability for claims arising out of the contract and undertook to purchase insurance presumably coextensive with that liability, liability that need not have covered claims arising from A.O. Smith's negligence.
 
 
 6
 We are drawing pretty fine distinctions. What mainly distinguishes the present case from Hastreiter and Herchelroth is that the reference to insurance preceded the reference to liability in those cases and follows it in this one. But it is right to construe those cases narrowly, lest Wisconsin's clear-statement rule be dangerously eroded, which Dykstra and Spivey, the state supreme court's latest decisions, do not seem inclined to do. And it is not an irrational distinction. The duty to purchase liability insurance in Hastreiter and Herchelroth was unqualified, and must therefore have covered the negligence of either party; that was the "only reasonably inferable purpose of the [indemnity] agreement," as Spivey explains. 255 N.W.2d at 472. In our case, the duty is to insure against "all claims," and there may be an implicit exception for claims arising out of the negligence of the other party to the contract.
 
 
 7
 Because the parties' indemnity agreement does not to a sufficient certainty cover claims arising out of A.O. Smith's negligence, the judgment of the district court must be reversed and the case remanded for a determination of whether A.O. Smith was in fact negligent; if it was not--and the fact that A.O. Smith settled with the Suttons for a modest sum does not prove that it was negligent, but only that it didn't think the case worth litigating further--then it may well be entitled to indemnity. The indemnity provision is broadly drafted; the only pertinent exception seems to be the one for claims arising out of A.O. Smith's negligence. For all we know, Sutton sued A.O. Smith only because the state workers' compensation law prevented his seeking common law damages from Q-1, his employer, and not because A.O. Smith was actually negligent.
 
 
 8
 REVERSED AND REMANDED.