ANN WALSH BRADLEY, J. (dissenting).
¶ 36 "All work performed will be ... insured." This language is on the first page of the contract between Cintas and Becker, in bold type. A reasonable person reading this contract language would think that it means what it says. But not the majority. In the majority's view, this unequivocal language is transformed to mean only that Cintas "carries an insurance policy." Majority op., ¶ 27.
¶ 37 Rather than giving effect to this language, the majority instead enforces a liability-shifting provision set forth in the finest of fine print. The effect is that, yes, Cintas's work is "insured," but not by Cintas. Instead, the liability-shifting indemnity provision foists liability for Cintas's own negligence onto Becker. The indemnity provision appears in miniscule type as part of an identically-styled laundry list that cannot be easily read without a magnifying glass.
¶ 38 The general rule of law in Wisconsin (as well as in Ohio) is that an indemnification provision will not be construed to cover an indemnitee for its own negligent acts unless there is a clearly expressed statement to that effect. Spivey v. Great Atlantic & Pac. Tea Co., 79 Wis. 2d 58, 63, 255 N.W.2d 469 (1977) ; see George Dingledy Lumber Co. v. Erie R. Co., 102 Ohio St. 236, 131 N.E. 723, 725 (1921). Likewise, Wisconsin's strong public policy is that such agreements must be conspicuous lest they be deemed unconscionable. See Deminsky v. Arlington Plastics Machinery, 2003 WI 15, ¶¶ 26-27, 259 Wis. 2d 587, 657 N.W.2d 411.
¶ 39 Whether it be under Wisconsin or Ohio law, an ambiguous provision cannot be enforced. Additionally, Ohio law cannot be invoked to circumvent important Wisconsin public policy considerations. Because the indemnification provision here is both ambiguous and unconscionably inconspicuous, the majority's application of Ohio law must fail.
¶ 40 Accordingly, I respectfully dissent.
I
¶ 41 Becker Property Services contracted with Cintas to perform regular inspections of the fire-suppression system in a property Becker managed. Majority op., ¶ 3. The fire-suppression system allegedly failed and a fire in the property caused approximately $900,000 in damages. Id.
¶ 42 The property owner, several building tenants, and the property's insurers sued Cintas for negligence and breach of implied warranty. Id., ¶ 4. Pursuant to an *90 indemnity provision in the contract, Cintas sought to have Becker indemnify Cintas for Cintas's own negligence. Id.
¶ 43 The majority first enforces a choice of law provision in the contract between Cintas and Becker that requires the use of Ohio law. Id., ¶ 2. Second, applying Ohio law, it ultimately concludes that the indemnity provision is enforceable. Id. Consequently, it determines that Becker must indemnify Cintas for Cintas's own negligence.
II
¶ 44 At the outset, the majority missteps in framing what it refers to as the threshold question: "As between Wisconsin and Ohio, which law provides the rule of the decision?" Majority op., ¶ 1. The question, as framed, assumes that Ohio is qualified to be a contender. It is not.
¶ 45 In framing the "threshold" issue in this fashion, the majority is able to avoid addressing the real threshold issues that would prove fatal to its conclusion. If the language of the contract is ambiguous, under either Wisconsin or Ohio law, the majority's conclusion cannot stand. Next, even if the language of the liability-shifting indemnity provision is unambiguous, if it contravenes important Wisconsin public policy, Ohio law cannot be enforced. An examination of these issues renders Ohio unqualified to even be in the ring.
¶ 46 The majority errs in three significant ways. First, it overlooks a substantial ambiguity in the contract, misconstruing a promise that Cintas's work is "insured." Second, it disregards the indemnity clause's inconspicuous nature, giving effect to a liability-shifting provision that appears in the middle of a block of text, that is so small as to be barely legible, and is not set off from the surrounding text or emphasized in any way. Third, it ignores important Wisconsin public policy considerations and erroneously applies Ohio law to this dispute. I address each in turn.
A
¶ 47 The majority errs first when it overlooks the ambiguity created by Cintas's promise that its work is "insured." On the first page of the contract, in bold type is the statement: "All work performed will be according to NFPA, State, and City Fire Department requirements and is guaranteed, insured and done by licensed personnel" (emphasis added). From this language, it is reasonable to conclude that the work is insured by the drafter of the contract, Cintas.
¶ 48 However, the contract also contains the indemnity provision, which states:
Indemnity. Purchaser, at its own expense, shall defend, indemnify and hold harmless Seller from any claim, charge, liability, or damage arising out of any goods or services provided by Seller hereunder, including any failure of the goods or services to function as intended[.] Purchaser acknowledges that Seller shall have no liability or responsibility for any loss or damage to persons or property resulting from any fire or equipment malfunction.
This provision shifts liability from Cintas to Becker, even in situations of Cintas's own negligence.
¶ 49 In Wisconsin, the general rule is that "an indemnification agreement will not be construed to cover an indemnitee for his own negligent acts absent a specific and express statement in the agreement to that effect." Spivey, 79 Wis. 2d at 63, 255 N.W.2d 469. Such indemnity agreements are subject to strict construction. Id.
¶ 50 The Spivey court explained the two ways in which an obligation to indemnify an indemnitee for its own negligence will be upheld: (1) if the agreement clearly and *91 unequivocally states that the indemnitee is to be covered for losses occasioned by his own negligent acts; and (2) "if it is clear that the purpose and unmistakable intent of the parties in entering into the contract was for no other reason than to cover losses occasioned by the indemnitee's own negligence ...." Id. at 63-64, 255 N.W.2d 469.
¶ 51 Similarly, as the majority provides, the rule in Ohio is that if the liability-shifting indemnity provision is ambiguous, then the provision cannot be enforced:
Such an interpretation should not be given a contract that would make the appellant responsible for the consequence of a negligent act of the appellee unless no other meaning can be ascribed to it. If a doubt existed as to its meaning, the court would resolve that doubt against the contention that the contract was intended to indemnify appellee against its own negligence. Every presumption is against such intention.
Majority op., ¶ 33 (citing George H. Dingledy Lumber Co., 131 N.E. at 725 ).
¶ 52 Far from being clear and unequivocal, the contract in this case is contradictory and therefore ambiguous. The bold type on the first page of the contract and the indemnity provision, when read together, are hopelessly ambiguous regarding whose responsibility it is to provide insurance for Cintas's work.
¶ 53 To explain, the bold type on the first page says that Cintas's work is insured. A reasonable reader would interpret this as meaning that Cintas would insure its own work. A reasonable reader would not read this language as the majority does, to indicate merely that Cintas "carries an insurance policy." See majority op., ¶ 27.
¶ 54 However, the indemnity clause says the work is insured, but not by Cintas. The indemnity clause thus shifts liability for the work to Becker. This of course conflicts with the exhortation that the work is "insured," rendering the contract as a whole irreconcilably ambiguous.
¶ 55 Under both Wisconsin and Ohio law, this ambiguity requires construing the contract against Cintas. The contract does not "clearly and unequivocally" provide that Becker is to indemnify Cintas for its own negligence. See Spivey, 79 Wis. 2d at 63, 255 N.W.2d 469. There is certainly another meaning that can be ascribed to it. See George H. Dingledy Lumber Co., 131 N.E. at 725. Accordingly, I determine that the indemnity provision, is unenforceable because it is ambiguous.
B
¶ 56 In addition to being ambiguous, the indemnity provision is also inconspicuous pursuant to Wisconsin law. This court in Deminsky announced the bright line requirement that "indemnity contracts in which parties agree to indemnify the indemnitee for the indemnitee's own negligence" must be conspicuous. 259 Wis. 2d 587, ¶ 28, 657 N.W.2d 411. The issue in Deminsky arose in the context of the indemnitor's argument that the indemnity provision at issue was unconscionable because it was inconspicuous. Id., ¶ 26.
¶ 57 The standard for conspicuousness in indemnity contracts is set forth in Wis. Stat. § 401.201(2)(f).[1] Id., ¶ 28. A term is "conspicuous" if any of the following apply:
1. A heading in capitals equal to or greater in size than the surrounding *92 text, or in contrasting type, font, or color to the surrounding text of the same or lesser size.
2. Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.
§ 401.201(2)(f).
¶ 58 Applying the statute's conspicuousness standard to the facts of this case, the indemnity provision here is undoubtedly inconspicuous. First, the font size is incredibly small. Counsel for Becker brought a magnifying glass with him to oral argument in this case to facilitate reading the provision, and with good reason.[2]
¶ 59 Second, the entirety of the terms and conditions set forth in the contract look exactly the same. The indemnity provision is only one of seventeen identical-looking, fine-print sections contained on the eighth and ninth pages of the nine-page contract. The indemnity provision has no heading, capitalization, bolding, italics, or underlining of any kind. Nothing about the provision grabs the reader's attention in any way.[3] Accordingly, I determine that the indemnity provision is inconspicuous and therefore unenforceable under Wisconsin law.
C
¶ 60 The preceding analysis of Deminsky's conspicuousness requirement informs my analysis of the choice of law provision. According to the choice of law provision, "The rights and obligations of the parties contained herein shall be governed by the laws of the State of Ohio, excluding any choice of law rules which may direct the application of the laws of another jurisdiction."
¶ 61 Wisconsin courts have acknowledged that parties to a contract may expressly agree that the law of a particular jurisdiction shall control their contractual relations. Bush v. National Sch. Studios, Inc., 139 Wis. 2d 635, 642, 407 N.W.2d 883 (1987) (citations omitted). However, this proposition is by no means unqualified. Id. Parties cannot agree to be bound by the law of a particular jurisdiction "at the expense of important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded." Id.
¶ 62 In concluding that Ohio law applies, the majority addresses the choice of law provision without reference to the indemnity provision's conspicuity. Yet, before determining whether the choice of law provision applies, one must determine first if there is an "important public policy" at stake. See id.
*93 ¶ 63 The majority refuses to address Becker's argument that the indemnification provision must be conspicuous under Wisconsin law because "it offered no similar argument with respect to Ohio's law." Majority op., ¶ 29 n.11. This analysis puts the cart before the horse. Rather than diving into the application of Ohio law, the majority should instead have initially scrutinized Wisconsin's important public policy regarding the unconscionability of inconspicuous liability-shifting provisions. Such an analysis leads me to conclude that Ohio law does not apply to this dispute in the first instance.
¶ 64 The Bush court declined to provide an exhaustive list of public policies that would render a choice of law provision null. However, it specifically referenced laws "which make a particular contract provision unenforceable," such as "unconscionability doctrines," as sufficiently important to justify disregarding a contract's choice of law provision. Bush, 139 Wis. 2d at 643, 643 n.1, 407 N.W.2d 883. The bright line conspicuousness requirement announced in Deminsky is rooted in the doctrine of unconscionability. See Deminsky, 259 Wis. 2d 587, ¶¶ 26-27, 657 N.W.2d 411 ; see also Yauger v. Skiing Enters., Inc., 206 Wis. 2d 76, 86-87, 557 N.W.2d 60 (1996).
¶ 65 An unconscionability doctrine is an "important public policy" identified by the Bush court. This policy would be circumvented if we gave effect to the choice of law provision.[4] Therefore, the choice of law provision's selection of Ohio law is unenforceable.[5] Accordingly, I determine that Wisconsin law applies.[6]
¶ 66 For the foregoing reasons, I respectfully dissent.
¶ 67 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.
Appendix *94 *95 --------

At the time Deminsky was decided, this conspicuousness standard was set forth in Wis. Stat. § 401.201(10). This statute has since been renumbered to § 401.201(2)(f). See 2009 Wis. Act 320.

The inconspicuous nature of the indemnity provision is demonstrated by a glance at the terms and conditions section of the contract, which is included as an appendix to this dissent. I direct the reader's attention to the indemnity provision, which is paragraph ten in the list of 17 items, all of which are set forth in what Becker maintains is 4.5 point font.

In cases finding a contract provision to be conspicuous and enforceable there was some important characteristic to the provision that is lacking in this case. See Deminsky v. Arlington Plastics Machinery, 2003 WI 15, ¶ 29, 259 Wis. 2d 587, 657 N.W.2d 411 (highlighting the fact that the indemnity provision at issue had a heading in capital letters and bold print); Rainbow Country Rentals and Retail, Inc. v. Ameritech Publ'g, Inc., 2005 WI 153, ¶ 42, 286 Wis. 2d 170, 706 N.W.2d 95 (emphasizing the fact that the liquidated damages provision at issue contained a specific reference in capital letters to a paragraph placing a limitation on available remedies).

My research has revealed no Ohio case establishing a similar conspicuousness rule to that announced in Deminsky, 259 Wis. 2d 587, 657 N.W.2d 411.

Further, it would render Deminsky's conspicuousness requirement entirely toothless if a party could avoid the requirement by way of a choice of law provision that is itself inconspicuous. See Appendix, ¶ 15.

I further observe that the majority's analysis results in an opinion of limited value in either Wisconsin or Ohio. What is the precedential value of a Wisconsin court's interpretation of Ohio law? Its application appears to be limited to this specific situation-where a choice of law provision results in a Wisconsin court applying Ohio law.