BIALAS and wife, Plaintiffs, v. PORTAGE COUNTY, Defendant and Respondent: GROSS, Defendant and Appellant.

*No. 85 (1974). Submitted under sec. (Rule) 251.54 October 30, 1975.—Decided December 19, 1975.*
(Also reported in 236 N. W. 2d 18.)

For the appellant the cause was submitted on the brief of *Crowns, Merklein, Midthun & Metcalf* of Wisconsin Rapids.

For the respondent the cause was submitted on the brief of *Peickert, Anderson, Fisher, Shannon & O'Brien* of Stevens Point, and *Daniel G. Golden,* district attorney.

HEFFERNAN, J. The only question on this appeal is whether the indemnity and save-harmless provisions of a contract between the Wisconsin department of transportation (division of highways) and Portage county, hereinafter contractor, entitle a department employee to reimbursement from the contractor for liability to third persons by reason of the department employee's own negligence.

The employee is not entitled to indemnity.

The record shows that the department of transportation contracted with Portage county to do certain work on Bypass Highway 51. On November 9, 1971, pursuant to the contract, Thomas Gross, an inspector for the

state division of highways, and employees of the Portage county highway department removed a building from the right-of-way by burning. The building was set afire, and thereafter Inspector Gross left for other duties. Shortly thereafter, a barn on adjacent property caught fire and was destroyed. The owner of that barn, Alfred J. Bialas, and his wife sued Portage county and Thomas Gross for damages. Gross cross-complained against Portage county pursuant to the indemnity clause in the contract.

The jury apportioned negligence 73 percent to Gross and 27 percent to Portage county. Gross' motion for judgment on his cross complaint was dismissed, and judgment was entered on the verdict. Gross has appealed from the order dismissing the cross complaint and from the judgment which followed.

This court has consistently upheld the validity of indemnity contracts. *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6; *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. 2d 194, 120 N. W. 2d 95, 121 N. W. 2d 274. Such agreements are liberally construed when they deal with the negligence of the indemnitor, but are strictly construed when the indemnitee seeks to be indemnified for his own negligence. *Baker v. McDel Corp.* (1971), 53 Wis. 2d 71, 191 N. W. 2d 846; *Algrem v. Nowlan* (1967), 37 Wis. 2d 70, 154 N. W. 2d 217.

Gross was liable in the principal suit only for his own negligence. The question, then, is whether, under the underlying contract, he is entitled to indemnity for his own negligent conduct. In accordance with the authorities cited above, the obligation to indemnify must be clearly expressed in the agreement.

The relevant portions of the contract follow:

"[Sec.] 107.11 Protection and Restoration of Property and Property Marks. . . .

". . .

"The contractor shall be responsible for the damage or destruction of property of any character resulting from neglect, misconduct, or omission in his manner or method of execution or non-execution of the work, or caused by defective work or the use of unsatisfactory materials, and shall restore such property to a condition similar or equal to that existing before such damage or injury was done, by repairing, rebuilding, or replacing it as may be directed, or he shall otherwise make good such damage or destruction in an acceptable manner. If he fails to do so, the engineer may, after the expiration of a period of 48 hours after giving notice to him in writing, proceed to repair, rebuild or otherwise restore such property as may be deemed necessary, and the cost thereof shall be deducted from any compensation due or which may become due the contractor under his contract."

"[Sec.] 107.12 Responsibility for Damage Claims. The contractor and his surety shall indemnify and save harmless the State, its officers and employees, from all suits, actions or claims of any character brought because of any injuries or damages received or sustained by any person, persons, or property on account of the operations of the said contractor; or on account of or in consequence of any neglect in safeguarding the work, or through use of unacceptable materials in constructing the work; or because of any act or omission, neglect or misconduct of said contractor; or because of any claims or amounts recovered for any infringement of patent, trademark or copyright; or from any claims or amounts arising or recovered under the Workmen's Compensation Law; or any other law, ordinance, order or decree; and so much of the money due the said contractor under and by virtue of his contract as shall be considered necessary by the Highway Commission for such purposes, may be retained for the use of the State; or, in case no money or insufficient money is retained, his surety shall be held. The contractor shall also comply with all of the above requirements indemnifying and saving harmless the county, town, or municipality in which the improvement is made and each of them separately or jointly and their officers and employees.

" . . .

"It shall be the contractor's responsibility to see that all of the contract operations incident to the completion

of his contract are covered by public liability and property damage liability insurance in order that the general public or any representative of the contracting authority may have recourse against a responsible party for injuries or damages sustained as a result of said contract operations. This requirement shall apply with equal force, whether the work is performed by the contractor, or by a subcontractor or by anyone directly or indirectly employed by either of them."

"[Sec.] 107.15 Personal Liability of Public Officials. In carrying out any of the provisions of this contract or in exercising any power or authority granted to them thereby, there shall be no personal liability upon the Division, its agents and employees, it being understood that in such matters they act as agents and representatives of the State. Any right of action by the contractor against the Division, or its agents or employees, is hereby expressly waived."

It should be noted that in the first of the quoted paragraphs it is clear that the contractor shall be responsible for neglect in *his* execution of the work. The second paragraph, the indemnity clause, provides that the county shall indemnify and save harmless the state on account of the operations of the *contractor* or because of any neglect of the *contractor*. Little can be gleaned from those paragraphs which would indicate that the state or its employees were clearly intended to be indemnified for their own negligence.

The general insuring clause, paragraph 3 above, provides that it is the contractor's responsibility to see to it that the contract operations are covered by public-liability and property-damage insurance in order to protect the general public or to protect a representative of the contracting authority in his recourse against the responsible party for damages. Nowhere in that paragraph of the contract is there any indication that it is the state or its representative who are to be protected against the consequences of their own negligence.

The fourth paragraph quoted above provides that there is no personal liability to the contractor upon the division

or its agents as a result of the carrying out of the contract.

Gross does not dispute the general rule that indemnity agreements which would reimburse an indemnitee for his own negligence must be strictly construed. He relies, however, on two cases decided by this court (*Herchelroth, supra,* and *Hastreiter v. Karau Buildings, Inc.* (1973), 57 Wis. 2d 746, 205 N. W. 2d 162) in which this court construed indemnity agreements to provide that the indemnitee may be reimbursed for an obligation incurred as a result of his own negligence. Both of those cases are, however, clearly distinguishable from the one before us. *Herchelroth* involved an indemnification contract contained in the lease of a rental truck. The lessee of the truck was found negligent and liable in damages in a suit brought by the driver of another automobile. The driver of the truck cross-complained against the lessor on the basis of the indemnification clause in the rental agreement. That agreement provided:

" '. . . The lessor agrees to secure and pay for property damage and public liability insurance on the leased equipment and to save the lessee harmless from any damage thereby during the duration of this agreement. . . .' " *Herchelroth,* pages 144, 145.

In that case the indemnitee was suing for indemnity for an obligation incurred by his own negligence. This court, however, held that the intent of the parties clearly was to require the lessor to bear the cost of the lessee's negligent acts. The court emphasized that no other reason was apparent in the contract for the save-harmless clause in the agreement. The court concluded that, where the parties could not have but intended that the insurance the lessor was to secure was to protect the lessee from the consequences of the lessee's negligence, the indemnity agreement clearly contemplated that the lessee would be indemnified even though his liability was the result of his own negligence.

In *Hastreiter*, the indemnification clause in the lease was interpreted to require the tenant to hold the landlord harmless in an action by one of the tenant's employees against the landlord for injuries sustained in a fall on a stairway of the leased premises. The tenant argued that it was the negligence of the landlord in failing to install the handrail which caused the accident and cited the rule that the indemnification clause would not be construed to provide for indemnification of a party from liability created from the effects of his own negligence. This court held, however, that the interpretation of the indemnification agreement was ruled by *Herchelroth*. We pointed out that it was clear from the agreement that the express intention of the parties was to effect the indemnitee's obligation to bear the cost of his own negligent actions. The court concluded, in relying upon *Herchelroth:*

"The same reasoning applies in this case. The purpose of the public liability insurance clause can only be to protect the landlord from some liability which it sustains as the owner of the building. But, having contracted away the right to possession, it is liable only for structural defects or a failure to maintain or repair the building. . . .
"The public liability insurance clause is intended to protect the landlord from the effects of his own negligence. The only issue is the scope of the protection accorded. To construe the indemnification provision as the appellant argues would be to make the hold harmless clause surplusage." *Hastreiter, supra,* page 749.

In the instant case, however, Gross argues that *Herchelroth* and *Hastreiter* are controlling because of the insurance provision included in the contract between the department of transportation and Portage county. He argues that, were the concern of the contracting authority only for indemnity for the acts or omission of the contractor, the affirmative requirement of insurance coverage would be unnecessary. From that premise, he argues that the intent of the parties was to indemnify

the department or its agents even when the negligent act was committed by the department's own employee. The facts of this case are, however, clearly distinguishable.

Although there is an insuring clause present in this contract, there is an explanation for the insurance provision that evidences a completely different intent than that of indemnifying one party for his own negligent acts. The insurance provision in the instant contract is for a separate, distinct, and stated purpose—to provide a fund from which any injured member of the public could recover for damages sustained as a result of the contract operations. The insurance requirement merely guards against the possibility that an aggrieved third party would be left without recourse against the responsible party if the damages are suffered as a result of the operations of a contractor who might be insolvent. Thus, unlike *Herchelroth* and *Hastreiter,* the indemnity, save-harmless provision and the insurance provision still have meaning, even though the contract is not construed to require Portage county to indemnify the department for the negligent acts of its own employees.

While the position of Gross is arguably meritorious, it is not clear from the contract that indemnification was to run to the department for the negligence of its own employees; and, accordingly, as so construed, the indemnification provision must fail.

This case is controlled by the holdings of *Young v. Anaconda American Brass Co.* (1969), 43 Wis. 2d 36, 168 N. W. 2d 112, and *Brown v. Wisconsin Natural Gas Co.* (1973), 59 Wis. 2d 334, 208 N. W. 2d 769. In *Young,* we said:

"The language of the agreement strictly construed does not expressly provide Ballard will indemnify Anaconda for Anaconda's tortious acts.

". . .

"In this case . . . the injury to the employee was caused by the combined negligence of the indemnitee

and the indemnitor. We believe *Algren* must be construed to hold that the indemnitor is not liable for such portion of the total liability as is attributable to the acts of the indemnitee unless the indemnity contract by express provision and strict construction so provides; and that the indemnitor is liable for such portion of the total liability as is attributable to the indemnitor's acts if provided for without a strict construction of the agreement." (P. 55)

In *Brown,* we said:

"The indemnity provision in the contract fails to provide that Kenneth MacDonald must indemnify the Telephone Company for the Telephone Company's own negligence. Under the decisions of this court, such an obligation will not be found by implication. At most, the agreement obligates Kenneth MacDonald to indemnify the Telephone Company for any liability vicariously incurred because of MacDonald's negligence.

". . .

"In the instant case the trial court allocated liability on the basis of actual fault. Since the Telephone Company is not being held vicariously liable (in terms of its obligation to pay 50 percent of the damages), it is not entitled to indemnity on that basis. The trial court correctly concluded that the Telephone Company is not entitled to indemnity for its own negligence in the absence of an express agreement to that effect." (P. 353)

These cases are analogous to the one before us and require the conclusion that Gross is not entitled to indemnity. The indemnity provision in the present contract fails expressly to provide that Portage county must indemnify the department for the negligence of its employees.

Under the uniform holdings of this court, an obligation to indemnify under those circumstances will not be found by implication; and, at the most, the insurance provision only arguably implies such an obligation. The obligation of Portage county to indemnify under these circumstances is not clear.

*By the Court.*—Order and judgment affirmed.