HERITAGE MUTUAL INSURANCE COMPANY, Plaintiff-Appellant,

v.

TRUCK INSURANCE EXCHANGE, Gillfoy Printing Company, Inc. and Marlin Benkowski, Defendants-Respondents.

Court of Appeals

*No. 93–2021. Submitted on briefs March 1, 1994.—Decided April 26, 1994.*

(Also reported in 516 N.W.2d 8.)

For the plaintiff-appellant the cause was submitted on the briefs of *Andrew M. Bath*, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Fellows, Piper & Schmidt* by *Steven T. Caya*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

WEDEMEYER, P.J.   Heritage Mutual Insurance Company appeals from a judgment finding that Truck Insurance Exchange was not liable for losses Heritage paid to its insured, Hart Engraving Company, due to a

fire. The judgment in favor of Truck Insurance was based on the trial court's conclusion that a clause in the lease between Gillfoy Printing Company, Inc., the owner of the building that was burned, and Hart, a tenant in the building, indemnified Gillfoy for any loss due to the negligence of Gillfoy. Because the trial court's interpretation of the indemnification clause at issue was not erroneous, we affirm.

## I. BACKGROUND

The facts underlying the present cause of action are few and undisputed. On December 10, 1990, Marlin Benkowski, an employee of Gillfoy, was operating a bench saw during the course of his employment. Sparks formed during the operation of the saw, igniting saw dust and metal shavings. During the course of the ensuing fire, Hart sustained property damage. Heritage, pursuant to an insurance agreement with Hart, paid a total of $44,178.29 as a result of the fire damage.

Heritage subsequently filed a lawsuit against Truck Insurance, Gillfoy's insurer, seeking reimbursement of its payment to Hart. Truck Insurance moved for summary judgment asserting that Heritage was not entitled to recover from Truck Insurance because Hart had agreed to indemnify Gillfoy for any damage resulting from Gillfoy's negligence as part of the lease agreement entered into between the parties on January 1, 1986. The trial court agreed and granted summary judgment in favor of Gillfoy and Truck Insurance. Heritage now appeals.

## II. DISCUSSION

This case requires us to consider the language of an indemnification agreement within a lease. The lease provision in dispute provides in relevant part:

251

12. Damage to Lessee's Property The lessor [Gillfoy] shall not be liable to the lessee [Hart] for damage caused by fire, explosion, elements and act of God or any other casualty and the parties shall respectively secure from their insurance carriers waivers of subrogation to any claim of one against the other which has been compensated by insurance.

The construction of a written contract presents a question of law which this court reviews *de novo. Eden Stone Co. v. Oakfield Stone Co.*, 166 Wis. 2d 105, 115, 479 N.W.2d 557, 562 (Ct. App. 1991). "The objective in interpreting and construing a contract is to ascertain the true intention of the parties. A construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language useless or meaningless." *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621, 624 (1992) (citation omitted). Further, where the terms of a contract are plain and unambiguous, an appellate court simply construes the contract as it stands. *Eden Stone Co.*, 166 Wis. 2d at 115, 479 N.W.2d at 562. Words or phrases within a contract are only ambiguous "when they are reasonably or fairly susceptible to more than one construction." *Maas*, 172 Wis. 2d at 79, 492 N.W.2d at 624.

Both parties recognize that when dealing with subrogation law, a subrogee merely succeeds to the legal rights or claims of a subrogor. *See Garrity v. Rural Mutual Ins. Co.*, 77 Wis. 2d 537, 541, 253 N.W.2d 512, 514 (1977). A subrogee "is one who steps into the shoes of the subrogor to the extent it has made payment as a result of the actionable event." *Wilmot v. Racine County*, 136 Wis. 2d 57, 63, 400 N.W.2d 917,

919 (1987). However, "subrogation confers no greater rights on the subrogee than the subrogor had at the time of the subrogation." *Id.* Consequently, Heritage's right of subrogation, if any, is derived from Hart's right to recover from Gillfoy.

Both parties also agree that under Wisconsin law, indemnification agreements are valid. Indemnification agreements express the fact that the parties agree to hold one another harmless for the acts specified. The supreme court has noted the following concerning these provisions: "Such agreements are liberally construed when they deal with the negligence of the indemnitor, but are strictly construed when the indemnitee seeks to be indemnified for his own negligence." *Bialas v. Portage County*, 70 Wis. 2d 910, 912, 236 N.W.2d 18, 19 (1975). "[W]here the indemnitor . . . is itself free of negligence, the obligation to indemnify an indemnitee for its own negligence must be clearly and unequivocally expressed in the agreement." *Spivey v. Great Atlantic & Pacific Tea Co.*, 79 Wis. 2d 58, 63, 255 N.W.2d 469, 472 (1977). However, the supreme court has also recognized that:

> [A] strict construction of an indemnification agreement cannot be used to defeat the clear intent of the parties. If the agreement clearly states that the indemnitee is to be covered for losses occasioned by his own negligent acts, the indemnitee may recover under the contract. Additionally, if it is clear that the purpose and unmistakable intent of the parties in entering into the contract was for no other reason than to cover losses occasioned by the indemnitee's own negligence, indemnification may be afforded.

*Id.* at 63-64, 255 N.W.2d at 472. Consequently, an indemnification agreement is not to be interpreted in a vacuum, but rather in conjunction with the intent of the parties.

Heritage presents a two-prong attack on the indemnification agreement. First, Heritage asserts that the language of the lease provision concerning the indemnification for negligent acts of Gillfoy is not clearly and unequivocally expressed and, therefore, pursuant to *Spivey*, the agreement must fail. Second, Heritage contends that the intent of the lease provision was not to preclude imposition of liability on Gillfoy for damages incurred as a result of the negligence of Gillfoy's employee. Rather, Heritage asserts:

> [T]he mere presence of the clause requiring Hart to obtain a waiver of subrogation indicates that the drafter of the lease (Gillfoy) realized that the indemnification language which preceded it was not all encompassing. Perhaps the drafter thought that the indemnification language would protect Gillfoy from liability in most instances and the waiver of subrogation by Hart's insurance company would protect Gillfoy from liability not protected against by the indemnification language - e.g. liability arising from damages due to Gillfoy's own negligence or intentional acts.

Thus, Heritage takes umbrage at the trial court's statement that "the intent of the parties was for Hart to indemnify Gillfoy for its own negligence. Any other interpretation would render the phrase [regarding waivers of subrogation] meaningless."

Contrariwise, Truck Insurance interprets the language of the lease provision as an agreement whereby Gillfoy would be held harmless for any loss that might be sustained by Hart even if the loss was the direct

result of Gillfoy's negligence. Specifically, Truck Insurance points to that part of the lease provision which states "and the parties shall respectively secure from their insurance carriers waivers of subrogation to any claims of one against the other." Truck Insurance asserts that this language clearly manifests the intent of the parties to save one another harmless for any losses either party might suffer because of the other. Further, Truck Insurance posits that the specificity requirement of *Spivey* is not necessarily controlling.

We first consider Heritage's contention that *Spivey* controls the case at hand. In *Spivey*, the plaintiff commenced an action against the Great Atlantic & Pacific Tea Company as a result of his falling in an A&P warehouse. *Spivey*, 79 Wis. 2d at 60, 255 N.W.2d at 471. The plaintiff worked for Milwaukee Dressed Beef and was making a delivery to the A&P warehouse when he slipped and fell. *Id.* A&P interpleaded Milwaukee Dressed Beef based on its contention that it had an indemnification agreement with Milwaukee Dressed Beef. *Id.* at 61, 255 N.W.2d at 471. A&P asserted that because of the agreement, Milwaukee Dressed Beef agreed to indemnify A&P for any damages that it might sustain as a result of injuries sustained by Milwaukee Dressed Beef employees on A&P premises. *Id.* The trial court ruled that the agreement did not cover the negligent acts of A&P. *Id.* A&P subsequently sought review by the supreme court.

The supreme court began its consideration by setting forth the agreement at issue:

"In the event any of our [Milwaukee Dressed Beef Company] representatives or those of our subsidiaries, affiliates, Divisions and Units are permitted to visit any A&P store, in consideration of such permission we hereby agree to indemnify and

save you harmless from any loss or liability arising in any manner out of the presence of our representatives on any part of the premises of A&P stores."

*Id.* at 62, 255 N.W.2d at 471. The court then explained that generally speaking, the obligation to indemnify an indemnitee for its own negligence must be clearly and unequivocally expressed, except where it is clear that the intent of the parties was to cover losses occasioned by the indemnitee's own negligence. *Id.* at 63-64, 255 N.W.2d at 472. Thus, the court recognized that "a strict construction of an indemnification agreement cannot be used to defeat the clear intent of the parties." *Id.* at 63, 255 N.W.2d at 472.

Applying the indemnification language from the contract to the legal standard set forth, the court held that A&P had failed to show that it was entitled to indemnification. First, the contract provision did not specifically purport to protect A&P in the event of damages sustained through its own negligence. *Id.* at 64, 255 N.W.2d at 472. Second, the court concluded that it was not clear that the purpose and unmistakable intent of the parties in entering the contract was for no other reason than to cover losses occasioned by A&P's own negligence. *Id.*

In the instant case, there is no dispute that nothing in the indemnification agreement specifically purports to protect Gillfoy in the event of damages sustained by its negligence. However, Truck Insurance's assertions to the contrary notwithstanding, that does not end the matter. Rather, as mandated by *Spivey*, we must look to see if the purpose and unmistakable intent of the parties in entering into the agreement was for no other reason than to cover losses occasioned by Gillfoy's own negligence. In this regard, two cases are helpful: *Herchelroth v. Mahar*, 36 Wis. 2d

140, 153 N.W.2d 6 (1967) and *Hastreiter v. Karau Buildings, Inc.*, 57 Wis. 2d 746, 205 N.W.2d 162 (1973).

In *Herchelroth*, the supreme court considered an indemnification agreement which provided in part:

> ". . . The lessor agrees to secure and pay for property damage and public liability insurance on the leased equipment and to save the lessee harmless from any damage thereby during the duration of this agreement. . . ."

*Herchelroth*, 36 Wis. 2d at 144-45, 153 N.W.2d at 8. The court concluded that this agreement was drawn in an effort to protect the indemnitee for its own negligent acts. *Id.* at 147, 153 N.W.2d at 9-10. Specifically, the court explained that the clause, "to save the lessee harmless from any damage thereby during the duration of this agreement," was intended by the parties as a means of indemnifying Mahar for consequences of its own negligent acts. *Id.* at 147, 153 N.W.2d at 10. The court found that the agreement simply could serve no other purpose. *Id.* at 146, 153 N.W.2d at 9.

The supreme court reached a similar conclusion in *Hastreiter*. There, as in the present case, the appellant argued that "an indemnification clause should not be construed to provide for indemnification of a party from the effects of his own negligence without clear and unequivocal language." *Hastreiter*, 57 Wis. 2d at 748, 205 N.W.2d at 163. The indemnification provision at issue in *Hastreiter* provided:

> "The Lessee agrees to carry and pay for public liability insurance and to hold the Lessor harmless from any liability arising out of the occupance of said leased premises by the Lessee."

*Id.* The court rejected the appellant's argument that the obligation of the indemnitor was limited solely to

the purchase of insurance because that would have the effect of rendering the save harmless clause surplusage. *Id.* at 749, 205 N.W.2d at 163. Specifically, the court recognized that explicit within the overall contract was the intention that the indemnitee be protected from the effects of his own negligence. *Id.*

Here, the trial court correctly considered the "intent" of the parties when entering into the lease and ruled that Heritage did not have a subrogated interest. Unlike *Spivey*, where no express provision was contained in the indemnity agreement, *and* where no intent to cover the negligent acts of the parties could be discerned, the lease provision in the present case clearly manifests an intent by the parties to cover losses occasioned by each other's negligence. Specifically, we believe that a reasonable interpretation of the language, "and the parties shall respectively secure from their insurance carriers waivers of subrogation to any claim of one against the other which has been compensated by insurance" manifests the intent to protect Gillfoy from liability incurred by its own negligent acts upon Hart. Without such a construction, the clause would be rendered mere surplusage.

Consequently, we conclude that the *only* reasonable interpretation, one which imports all the language of the clause, requires that the subrogation clause was intended to create another peril against which the parties were protected — acts of one's negligence. As recognized above, the general rule of construction is that an interpretation of an agreement which gives reasonable meaning to all provisions is preferable to one which leaves part of the language useless or inexplicable or creates surplusage. *Herchelroth*, 36 Wis. 2d at 147-48, 153 N.W.2d at 10. As such, the trial court

correctly gave meaning to all the language of the lease and appropriately granted summary judgment in favor of Truck Insurance premised on the fact that the lease contained indemnification for acts of negligence on the part of Gillfoy's employees.

Heritage next asserts that regardless of whether the indemnification provision at issue is effective as to Gillfoy in its capacity as a corporation, it is not enforceable against Gillfoy's employee who negligently started the fire.

Heritage, however, ignores the fact that a corporation acts out "of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation." *State v. Dried Milk Products Co-op*, 16 Wis. 2d 357, 361, 114 N.W.2d 412, 415 (1962). Therefore, an agreement to indemnify one's own negligence in the context of a corporation logically indemnifies employees via the doctrine of *respondeat superior*. Without such a construction, the indemnification clause would be rendered useless, as there is no conceivable way a corporation can act negligently without actions on the part of its employees. Because the indemnification clause was held to indemnify Gillfoy for its negligent acts, by necessity Gillfoy's employees are also indemnified.

In fact, *Bialas v. Portage County*, 70 Wis. 2d 910, 236 N.W.2d 218 (1975), relied upon by Heritage, illustrates this point. In *Bialas*, the Department of Transportation (DOT) contracted with the county to do work on a highway. *Id.* at 911, 236 N.W.2d at 19. In performing the contract, an employee of the DOT negligently removed a building from the right-of-way and, in the process, destroyed a barn owned by Bialas. *Id.* at 911-12, 236 N.W.2d at 19. Bialas sued the county and

the employee. *Id.* at 911, 236 N.W.2d at 19. The employee subsequently cross-complained against the county pursuant to an indemnity clause in the original contract. *Id.*

The court ruled that the contract "evidences a completely different intent than that of indemnifying one party for his own negligent acts." *Id.* at 917, 236 N.W.2d at 22. More importantly, however, the court stated that "it is not clear from the contract that indemnification was *to run to the department for the negligence of its own employees* . . . ." *Id.* (emphasis added). It is clear that the court interpreted the indemnification agreement as either existing or not existing specifically for the benefit of one of DOT's employees — in this case, Bialas. Consequently, the plausible conclusion is that the court considered the indemnification of the DOT as synonymous with the indemnification of the DOT's employees.

■

Heritage's final contention is that the lease provisions were not properly presented to the trial court and, therefore, summary judgment was inappropriately granted in favor of Truck Insurance. Heritage bases this assertion on the fact that the lease was not contained in an affidavit by someone having personal knowledge of the provisions as required by § 802.08, STATS.

Section 802.08(2), STATS., states in relevant part:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Our review of the record reveals that Heritage has never asserted that the lease provisions at issue are somehow different than the actual copy of the original lease. Thus, there is no genuine issue as to the contents of the lease and our resolution of the case is a question of law that we determine without any need for extrinsic evidence. *Gerdmann v. United States Fire Ins. Co.*, 119 Wis. 2d 367, 375, 350 N.W.2d 730, 735 (Ct. App. 1984). This rationale is the same for the trial court. Thus, it was not inappropriate for the trial court to consider the lease provisions as presented in the trial court briefs, nor was it inappropriate for the trial court to render summary judgment thereon.

*By the Court.*—Judgment affirmed.