**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**September 2, 2021**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* Wis. Stat. § 808.10 and Rule 809.62.

Appeal No.    **2020AP1521**

Cir. Ct. No.  **2019CV279**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT IV**

---

**ADAM N. RAMOS,**

   **PLAINTIFF,**

**GREAT AMERICAN INSURANCE COMPANY AND BLUE CROSS BLUE SHIELD OF ILLINOIS,**

   **INVOLUNTARY-PLAINTIFFS,**

 **V.**

**TRAIL RIDGE ENTERPRISES, INC., D/B/A TIMBER CREEK PIZZA AND SOCIETY INSURANCE,**

   **DEFENDANTS-APPELLANTS,**

**RONALD R. LUEPKE,**

   **DEFENDANT,**

**ACUITY, A MUTUAL INSURANCE COMPANY,**

   **DEFENDANT-RESPONDENT.**

---

APPEAL from an order of the circuit court for Jefferson County: WILLIAM F. HUE, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

¶1    FITZPATRICK, J. Plaintiff Adam Ramos was injured while delivering products to Trail Ridge Enterprises, Inc., d/b/a Timber Creek Pizza which at the time occupied a building leased from Ronald Luepke.[1]  Prior to Ramos' injury, Timber Creek and Luepke entered into a written lease (which we refer to as the "lease") but allowed that lease to expire.  Timber Creek continued to rent the premises from Luepke until after the date of Ramos' injury.

¶2    Ramos brought an action against Timber Creek and its insurer, Society Insurance, and Luepke and his insurer, Acuity Insurance, in the Jefferson County Circuit Court alleging that improper maintenance of the rented property caused his injuries.  Pursuant to what we refer to as the "indemnification provision" in the lease, Luepke and Acuity tendered the defense and indemnification of Ramos' claims to Timber Creek and Society.  Timber Creek and Society failed to accept the tender, and Luepke and Acuity requested a declaratory judgment requiring Timber Creek and Society to defend and indemnify Luepke and Acuity against Ramos' claims.  Timber Creek and Society responded to the motion arguing that the terms of the lease—including the indemnification provision—no longer applied at the time of Ramos' accident and that, even if the terms continued to apply, Luepke cannot be indemnified for his own alleged acts of negligence.  The circuit court granted Luepke's motion,

---

[1]  Consistent with the decision of the circuit court and the parties' briefing, we generally refer to Trail Ridge Enterprises, Inc., as "Timber Creek."

ordering in relevant part that: the indemnification provision applies in these circumstances; Timber Creek breached its duty to accept the tender of defense and indemnification from Luepke; and Luepke is entitled to reimbursement from Timber Creek for reasonable attorney fees he has incurred in this action. The circuit court further ordered that Acuity is dismissed from this action with prejudice. Timber Creek and Society appeal.[2]

¶3    For the reasons that follow, we affirm the circuit court's order.

## BACKGROUND

¶4    There is no dispute as to the following material facts.

¶5    Ronald Luepke owns real estate in Lake Mills, Wisconsin. Timber Creek operated a restaurant at that property from 2004 to 2016.

¶6    Luepke and Timber Creek were parties to a written lease which, by its terms, began in 2004 and terminated in 2006.[3] Timber Creek was to pay $1,000 per month in rent. When the lease terminated in 2006, the parties did not draft a new lease. However, Timber Creek continued to occupy the property and

---

[2] Neither Ramos nor Luepke has filed a brief in, or taken a position regarding, this appeal.

[3] Briefing in this court from Timber Creek and Society correctly states that Timber Creek was not a signatory to the lease, and that the lease was actually signed in late 2003 by Ron Mauer, Inc. Those parties ask this court to take judicial notice that the party to this appeal, Trail Ridge Enterprises, Inc., d/b/a Timber Creek, was incorporated on January 1, 2004. The circuit court determined that the lease was between Luepke and Trail Ridge Enterprises, Inc., d/b/a Timber Creek, and Timber Creek and Society do not contest that determination. The parties do not explain whether Trail Ridge Enterprises, Inc., d/b/a Timber Creek, is the changed name of Ron Mauer, Inc., or if it is a successor corporation to Ron Mauer, Inc. At any rate, the parties do not contend that the fact that the lease was entered into in 2003 by Ron Mauer, Inc., makes any difference to the result of any issue before this court.

Luepke continued to collect rent, albeit at a higher rate of $1,100 per month agreed to by Luepke and Timber Creek.

¶7 In 2016, while delivering products to Timber Creek, plaintiff Adam Ramos was injured when he fell on the stairs leading to the back entrance of Timber Creek. Ramos brought this action against Timber Creek and Luepke, and their respective insurers, alleging that both Timber Creek and Luepke negligently maintained the premises and violated Wisconsin's "Safe Place" statute, WIS. STAT. § 101.11 (2019-20).[4]

¶8 Pursuant to the terms of the indemnification provision in the parties' lease, Luepke tendered the defense and indemnification of Ramos' claims against him to Timber Creek and Society. In addition, Timber Creek and Society agree that Acuity tendered the defense of this action to Timber Creek and Society. Timber Creek and Society acknowledged receipt of the tender, but never indicated whether the tender was accepted or denied.

¶9 When Timber Creek and Society failed to accept the tender, Luepke and Acuity filed a motion for declaratory judgment in the circuit court requesting a declaration that Timber Creek and Society must defend, indemnify, and hold harmless Luepke and Acuity for any negligence of Luepke related to Ramos' claim and that Timber Creek and Society must reimburse Luepke and Acuity for fees and costs incurred in defending against Ramos' complaint following the tender to Timber Creek and Society. The circuit court issued a memorandum decision and order declaring, in pertinent part, that under the terms of the lease,

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

4

including the indemnification provision: (1) Timber Creek shall indemnify Luepke for any negligence attributed to Luepke in this action; (2) Timber Creek breached its duty to accept the tender from Luepke; (3) Timber Creek shall accept Luepke's tender of defense and "pay for the defense" of Luepke in this action; and (4) Luepke is entitled to reasonable attorney fees and costs that Luepke incurred while "defending the lease." The circuit court also ordered that Acuity was dismissed from this action with prejudice.[5] The court stayed further proceedings in this matter pending Timber Creek's appeal.

¶10    We will mention other material facts and specific language in the lease in the following discussion.

## DISCUSSION

¶11    Timber Creek[6] makes three primary arguments on appeal: (1) the terms of the lease, including the indemnification provision, were no longer in effect at the time of Ramos' injury; (2) if the indemnification provision of the lease was in effect at that time, Timber Creek need not defend or indemnify Luepke for Luepke's own negligence; and (3) Timber Creek should not be

---

[5] There has been no appeal of the circuit court's declaration that the indemnity and defense obligations to Luepke pursuant to the indemnification provision are owed solely by Timber Creek. In addition, the circuit court ordered that any issues concerning Society's contractual obligation to reimburse Timber Creek regarding Timber Creek's defense and indemnity obligations may be argued "further, if desired" in the circuit court. No party to this appeal requests review of that part of the circuit court's order.

Timber Creek and Society Insurance jointly filed initial and reply briefs in this court. From this point forward, we refer to Timber Creek and Society Insurance collectively as "Timber Creek" unless the context shows that the reference is solely to Timber Creek.

[6] We note that counsel for Timber Creek has, in briefing in this court, relied on an unpublished per curiam opinion of this court. Counsel is admonished not to cite to an unpublished per curiam opinion of this court outside the limitations in WIS. STAT. § 809.23(3).

5

required to reimburse Luepke for his attorney fees incurred in this action. We discuss each of Timber Creek's arguments in turn and begin with governing principles and our standard of review regarding a request for a declaratory judgment.

## I. Governing Principles and Standard of Review for a Declaratory Judgment.

¶12     When a court grants a declaratory judgment, the court exercises its statutory power to "declare rights, status, and other legal relations" germane to a claim. WIS. STAT. § 806.04(1). Declaratory judgment "allow[s] courts to anticipate and resolve identifiable, certain disputes between adverse parties." *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship*, 2002 WI 108, ¶43, 255 Wis. 2d 447, 649 N.W.2d 626.

¶13     A decision to grant or deny declaratory relief falls within the discretion of the circuit court. *Olson v. Farrar*, 2012 WI 3, ¶24, 338 Wis. 2d 215, 809 N.W.2d 1. "However, when the exercise of such discretion turns upon a question of law, we review the question independently of the circuit court's determination." *Id.* A circuit court's grant of declaratory judgment that turns upon the interpretation of a contract presents a question of law. *Id.*

¶14     We next turn to the parties' arguments regarding the applicability of the indemnification provision of the lease in these circumstances.

## II. Applicability of the Indemnification Provision of the Lease.

¶15     Timber Creek argues that the indemnification provision of the expired lease does not apply to Luepke's tender to Timber Creek of Ramos' negligence claims. As we explain, the indemnification provision of the lease does apply under WIS. STAT. § 704.25, which governs holdover tenancies. We begin by

setting forth governing principles concerning interpretation of statutes and holdover tenancies. We next apply those principles to the undisputed facts of record to reach our conclusion, and we then address and reject Timber Creek's arguments to the contrary.

## A. Governing Principles of Statutory Interpretation and Holdover Tenancies Under WIS. STAT. § 704.25.

¶16   This appeal requires us to interpret statutes. The interpretation of a statute is a question of law that we review de novo. *State v. Setagord*, 211 Wis. 2d 397, 405-06, 565 N.W.2d 506 (1997). Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*

¶17   When a tenant holds over after the expiration of a lease, the terms of the tenancy are governed by WIS. STAT. § 704.25. Subparts of that statute describe the options available to a landlord in those circumstances:

> *Nonresidential leases for a year or longer*. If premises are leased for a year or longer primarily for other than private residential purposes, and the tenant holds over after expiration of the lease, the landlord may elect to hold the tenant on a year-to-year basis.
>
> ….
>
> *When election takes place*. Acceptance of rent for any period after expiration of a lease or other conduct manifesting the landlord's intent to allow the tenant to remain in possession after the expiration date constitutes an election by the landlord under this section unless the

7

landlord has already commenced proceedings to remove the tenant.

Sec. 704.25(2)(a), (c).  Two other subparts of the statute set forth the terms that apply to the tenancy when a tenant holds over.  Subpart (3) states:

> A periodic tenancy arising under this section *is upon the same terms and conditions as those of the original lease* [except for specific lease terms not pertinent to this appeal].

Sec. 704.25(3) (emphasis added).  Subpart (4) addresses the effect of an agreement of the landlord and tenant regarding the holdover tenancy other than those terms delineated in the original lease:

> [Sec. 704.25] governs except as the parties agree otherwise either by the terms of the lease itself or by an agreement at any subsequent time.

Sec. 704.25(4).

¶18     As this court has summarized, this statute "allows the parties to an expiring lease to agree on terms for any post-expiration occupancy of the leased premises, but in the event they cannot or do not reach an agreement, it provides a bright-line rule to govern their relationship."  *Vander Wielen v. Van Asten*, 2005 WI App 220, ¶15, 287 Wis. 2d 726, 706 N.W.2d 123.  The bright-line rule as applied in this case is that, when there is a hold-over tenancy by election of the parties, it is subject to the same terms as those in the original lease except as the parties agree otherwise.

### B.  Application of WIS. STAT. § 704.25 to the Parties' Relationship.

¶19     As just noted, under WIS. STAT. § 704.25, when the lease between Timber Creek and Luepke expired and Timber Creek remained in possession of the property, Luepke had the option to permit Timber Creek to hold over.  *See*

8

§ 704.25(2)(a). Luepke is deemed to have permitted Timber Creek to hold over when he accepted Timber Creek's rent payments after the lease expired pursuant to § 704.25(2)(c) and pursuant to what we call the "holdover provision" of the parties' lease which states:

> It is agreed and understood that this lease shall terminate on the date specified above as the end of said term, and in the event the Lessee shall hold over beyond the period herein specified, it is hereby agreed by and between the parties hereto that *such holding over shall not be considered as a holding over from year to year but shall constitute a tenancy from month to month* which can be terminated by either party upon giving the statutory notice for terminating such tenancies.

(Emphasis added.)

¶20 Further, Luepke reached an agreement with Timber Creek regarding two terms of Timber Creek's holdover tenancy: (1) the tenancy will be on a month-to-month basis pursuant to the holdover provision of the lease, rather than on a year-to-year basis as is set forth in WIS. STAT. § 704.25(2)(a); and (2) Timber Creek will pay $1,100 per month in rent, rather than the $1,000 amount called for in the lease.

¶21 Because the parties did not reach an agreement regarding the remaining terms of Timber Creek's holdover tenancy, those remaining terms of the tenancy are governed by the "bright-line" rules of WIS. STAT. § 704.25. *See Vander Wielen*, 287 Wis. 2d 726, ¶15. As a result, the terms of Timber Creek's holdover tenancy were the same as those of the lease, except where the parties expressly agreed to a month-to-month tenancy and a higher rent. *See* § 704.25(3), (4) ("A periodic tenancy arising under this section is upon the same terms and conditions as those in the original lease … and [§ 704.25] governs except as the parties agree otherwise either by the terms of the lease itself or by an agreement at

9

any subsequent time."). Therefore, because the indemnification provision was a part of the lease, it became a term of Timber Creek's holdover tenancy. *See* § 704.25(3), (4).

¶22 Timber Creek makes three arguments in support of its position to the contrary, and we reject each.

¶23 First, Timber Creek argues that the holdover provision precluded the extension of any of the terms of the lease to Timber Creek's holdover tenancy because the holdover provision does not include any express language that extends the terms of the lease to Timber Creek's holdover tenancy. Contrary to Timber Creek's assertion, the lack of language expressly extending the terms of the lease to Timber Creek's holdover tenancy did not prevent the lease terms from applying to that holdover tenancy. Rather, as we have just explained, by operation of the applicable subparts of WIS. STAT. § 704.25, the lack of such language means that the terms of Timber Creek's holdover tenancy were governed by the terms of the lease except regarding the month-to-month tenancy term and the amount of rent. *See* § 704.25 (3), (4).

¶24 Second, Timber Creek argues that WIS. STAT. § 704.25 does not govern its holdover tenancy based on the following chain of reasoning. After expiration of the parties' lease, Timber Creek's continued occupancy of the premises was not a "holdover" under § 704.25 because "[a] holdover is without the landlord's permission." Instead, Luepke's conduct regarding Timber Creek's continued occupancy constitutes Luepke's acceptance of an "oral contract" for a "new tenancy." That new tenancy disregards the terms of the expired lease, except for the month-to-month agreement mentioned in the holdover provision. And, because "[§ 704.25] governs when there is no tenancy," Timber Creek

10

asserts that the creation of the "new tenancy" precludes the application of § 704.25.

¶25 Timber Creek misstates the terms of WIS. STAT. § 704.25. Timber Creek rests its analysis on the premise that a holdover only exists "without the landlord's permission." However, that is not correct because a holdover exists whenever a tenant occupies a premises after the expiration of the lease, regardless of the landlord's consent to such occupancy. *See, e.g.*, § 704.25(1) (stating that if a landlord does not consent to a holdover tenancy, the landlord may "remove the tenant and recover damages for such holding over"); § 704.25(2)(a) ("If premises are leased for a year or longer primarily for other than private residential purposes, and the tenant holds over after expiration of the lease, the landlord may elect to hold the tenant on a year-to-year basis."); *Vander Wielen*, 287 Wis. 2d 726, ¶16 ("We conclude, therefore, upon the landlord's acceptance of the tenant's rent payment for June 2000, both parties were bound to a tenancy terminating on May 31, 2001, on the same terms and conditions as set forth in the expired lease. The existence of a one-year holdover tenancy does not mean, however, that the landlord could not subsequently accept a surrender of the premises from the tenant and release him from his obligations as a holdover tenant."); *Holding Over*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "holding over" as a "tenant's action in continuing to occupy the leased premises after the lease term has expired."). Thus, Timber Creek's argument necessarily fails because Timber Creek's continued occupancy of the premises constituted a "holdover" even though Luepke consented to Timber Creek's holdover tenancy by accepting rent after expiration of the lease.

¶26 Moreover, the parties' agreement to Timber Creek's holdover tenancy did not, as Timber Creek argues, create a "new tenancy" that disregards

the terms of the expired lease. Timber Creek cites only to one authority in support of this argument, *Hog v. Johnson*, 209 Wis. 581, 245 N.W. 650 (1932). In that case, the tenant leased property from the landlord on a year-to-year basis, renewed annually. *Id.* at 582. Prior to the expiration of the final lease, the parties agreed that the tenant could continue to occupy the premises on a month-to-month basis after the lease expired. *Id.* Nine months after the expiration, the tenant notified the landlord that he was terminating the tenancy. *Id.* The court held that the parties' agreement established a month-to-month tenancy after the expiration of the lease and that the tenant was not liable for a full year period. *Id.* at 583 ("[T]he option on the part of the landlord to regard the tenant as liable for another year period can obviously not be exercised when the latter remains in possession under an agreement with the landlord that he is to hold for a shorter period.").

¶27    The decision in *Hog* does not support Timber Creek's argument that an agreement regarding the periodic basis of a holdover tenancy creates a "new tenancy" embodying only the terms of that particular agreement rather than any terms of the previous lease. Instead, *Hog* recognizes that an agreement to alter the periodic basis of a holdover tenancy rebuts the once-recognized presumption that "the landlord has elected to consider the tenancy from year to year." *Rottman v. Bluebird Bakery, Inc.*, 3 Wis. 2d 309, 311, 88 N.W.2d 374 (1958) (citing *Hog*, 209 Wis. at 583).[7] Nothing in *Hog* leads to the conclusion that the remaining

---

[7] We note that *Hog* and *Rottman* predate the enactment of the current WIS. STAT. § 704.25. These cases state that a landlord's acceptance of rent from a holdover tenant raises a rebuttable presumption that the landlord has elected to consider the tenancy from year-to-year. *Rottman v. Bluebird Bakery, Inc.*, 3 Wis. 2d 309, 311, 88 N.W.2d 374 (1958) (citing *Hog v. Johnson*, 209 Wis. 581, 583, 245 N.W. 650 (1932)). However, § 704.25 now specifies that a landlord's acceptance of rent from a holdover tenant "constitutes" an election by the landlord to hold the tenant on a year-to-year basis. Sec. 704.25(2)(a), (c); *Vander Wielen v. Van Asten*, 2005 WI App 220, ¶13, 287 Wis. 2d 726, 706 N.W.2d 123.

terms of the expired lease did not apply during Timber Creek's holdover tenancy. As explained earlier, WIS. STAT. § 704.25 directs that Timber Creek's holdover tenancy "is upon the same terms and conditions as those of the original lease," except where the parties agreed on a month-to-month tenancy and a higher rent than stated in the lease. Sec. 704.25(3), (4). Therefore, the parties did not create a "new tenancy" that disregarded the terms of the expired lease but, rather, the parties agreed to alter the default rules of § 704.25 only regarding the periodic basis and monthly rent of Timber Creek's holdover tenancy.

¶28 Finally, Timber Creek argues that WIS. STAT. § 704.25(4) completely precludes the application of other subparts of § 704.25 because the month-to-month specification of the holdover provision conflicts with the year-to-year holdover tenancy provision of § 704.25(2)(a). Timber Creek's argument is rejected because § 704.25(4) precludes the application of the other terms of § 704.25 only when "the parties agree otherwise either by the terms of the lease itself or by an agreement at any subsequent time." Here, as already discussed, by the terms of the lease and their agreement at the time of Timber Creek's holdover, the parties "agree[d] otherwise" regarding the month-to-month period of the holdover tenancy and the increased rent, but did not "agree otherwise" regarding the extension of the remaining terms of the lease to the holdover tenancy under § 704.25(3). As a result, § 704.25(4) does not preclude the application of the remainder § 704.25 to Timber Creek's holdover tenancy.

¶29 In sum, we agree with the circuit court that the terms of Timber Creek's holdover tenancy were the same as those of the lease, including the indemnification provision, except as to the month-to-month period of the holdover tenancy and the increased rent.

13

¶30    We next consider whether Timber Creek is required to defend and indemnify Luepke in this action.

### III. Indemnification.

¶31    Timber Creek argues that the indemnification provision in the lease does not require Timber Creek to defend and indemnify Luepke in this action because the indemnification provision does not expressly provide that Timber Creek will defend and indemnify Luepke for Luepke's negligent acts. Acuity responds that the indemnification provision establishes the parties' intent that Timber Creek defend and indemnify Luepke in this action—including for Luepke's own acts of negligence—and that Timber Creek breached the indemnification provision by refusing to accept Luepke's tender.

¶32    We begin our analysis of this issue by setting forth our standard of review and governing principles regarding indemnification agreements.

### A. Standard of Review and Governing Principles Regarding Indemnification Agreements.

¶33    The interpretation of a contract, including a lease, is a question of law that we review independently of the circuit court's determination. *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶21, 326 Wis. 2d 300, 786 N.W.2d 15. "The objective in interpreting and construing a contract is to ascertain the true intention of the parties. A construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language useless or meaningless." *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621 (1992) (citation omitted). Further, we interpret the language of a contract "consistent with what a reasonable person would understand the words to mean under the

14

circumstances." *Seitzinger v. Community Health Network*, 2004 WI 28, ¶22, 270 Wis. 2d 1, 676 N.W.2d 426. "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Maryland Arms*, 326 Wis. 2d 300, ¶23 (quoting *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 506, 577 N.W.2d 617 (1998)).

¶34     "Generally, contracts providing for indemnification in the case of the indemnitee's negligence are considered valid and not contrary to public policy." *Herchelroth v. Mahar*, 36 Wis. 2d 140, 145, 153 N.W.2d 6 (1967). But, Wisconsin favors strict construction of indemnity contracts when the indemnity contract purportedly protects the indemnitee from the indemnitee's own negligent acts. *Algrem v. Nowlan*, 37 Wis. 2d 70, 76, 154 N.W.2d 217 (1967). Nonetheless, "strict construction of an indemnification agreement cannot be used to defeat the clear intent of the parties." *Spivey v. Great Atl. & Pac. Tea Co.*, 79 Wis. 2d 58, 63, 255 N.W.2d 469 (1977).

¶35     Our supreme court has recognized that the intent of the parties to an agreement to indemnify the indemnitee for the indemnitee's own negligence may be shown in either of these two alternatives: (1) if the agreement "clearly states that the indemnitee is to be covered for losses occasioned by [the indemnitee's] own negligent acts"; or (2) if it is clear that the purpose and unmistakable intent of the parties in entering into the provision was to cover losses occasioned by the indemnitee's own negligence. *Dykstra v. Arthur G. McKee & Co.*, 100 Wis. 2d 120, 125, 301 N.W.2d 201 (1981) (citing *Spivey*, 79 Wis. 2d at 63-64); *Herchelroth*, 36 Wis. 2d at 147.

¶36     Here, Acuity relies on the second alternative just mentioned, in which the court determines as part of the analysis whether the "unmistakable

intent" of the parties in entering into the provision was "to cover losses occasioned by the indemnitee's own negligence." *Spivey*, 79 Wis. 2d at 63-64. As one example of such intent, in *Herchelroth* the contract contained the following language:

> The lessor agrees to secure and pay for property damage and public liability insurance on the leased equipment and to save the lessee harmless from any damage thereby during the duration of this agreement.

*Herchelroth*, 36 Wis. 2d at 144-45 (capitalization omitted). Our supreme court held that the intention of the parties in that clause was to "affect in some way" the lessee's obligation to bear the cost of his negligent actions. *Id.* at 146. The court explained that, if the lessor's entire obligation to indemnify the lessee was fully contained by the lessor's obligation to purchase insurance, then the "save harmless" clause would be surplusage. *Id.* at 147. In other words, because the indemnification agreement included provisions to secure liability insurance and to save harmless, both provisions must have separate meanings. Accordingly, the court adopted the construction which gave meaning to the "save harmless" clause and concluded that the clause protected the lessee from the consequences of his own negligence. *Id.*

¶37 Our supreme court and this court have followed the approach in *Herchelroth* and have concluded that, where a provision to purchase insurance is combined with a broad provision to indemnify and hold harmless the indemnitee, those provisions are evidence of the intent of the parties to indemnify the indemnitee for the indemnitee's own negligence. *See Hastreiter v. Karau Bldgs., Inc.*, 57 Wis. 2d 746, 748-49, 205 N.W.2d 162 (1973) (applying *Herchelroth* to an indemnification provision "strikingly similar" to that construed in *Herchelroth*); *Heritage Mut. Ins. Co. v. Truck Ins. Exch.*, 184 Wis. 2d 247, 258,

16

516 N.W.2d 8 (Ct. App. 1994) (even though there was no "express provision" regarding indemnification for the indemnitee's negligence, the "lease provision" "clearly manifests an intent by the parties" to protect against the indemnitee's acts of negligence); *Mikula v. Miller Brewing Co.,* 2005 WI App 92, ¶36, 281 Wis. 2d 712, 701 N.W.2d 613 (holding that an agreement to purchase insurance combined with an agreement to indemnify and save harmless "evidences a clear intent to indemnify the party for all liability, including that resulting from the indemnitee's own alleged negligence.").

## B. Timber Creek Must Defend and Indemnify Luepke.

¶38 With that background in mind, we consider the indemnification provision of the lease which states in pertinent part:

> [Timber Creek] shall … maintain in force general liability insurance in the minimum amount of $500,000 for bodily injury …. Copies of the above insurance [policies] shall be given to [Luepke]. [Timber Creek] shall hold [Luepke] harmless and indemnified at all times from and against any and all claims, demands, actions, damages, costs, expenses, and attorneys fees suffered, paid or incurred by [Luepke] on account of any damage or injury to life, person or property in or about the demised premises, and [Timber Creek] at its own expense agrees to defend any such action or actions on behalf of [Luepke], including claims and causes of action at common law, or arising under statute …, and if judgment shall be obtained or claim allowed in any such action or proceeding, [Timber Creek] shall pay and satisfy said judgment or claim in full.

¶39 The circuit court determined that it:

> cannot conceive of any purpose for [the indemnification provision] other than to set forth the parties' intent that if and when Luepke's negligent acts at the premises are brought to issue, Timber Creek [] would be obligated to assume Luepke's liability thereon. No other reason or purpose contrary has been brought to the Court's attention or asserted by Timber Creek []. Timber Creek [] was required in the contract to procure insurance for that

> purpose. Further, the parties chose language of indemnification circumstances including all events so as to encompass this intent and no other.

We agree with the circuit court for the following reasons.

¶40 Under the above-mentioned test for determining intent in these circumstances, the purpose and unmistakable intent of the parties in entering into the indemnification provision was for Timber Creek to cover losses occasioned by Luepke's own negligence. *See, e.g.*, **Herchelroth**, 36 Wis. 2d at 144-146. Like the indemnification agreements in **Herchelroth** and its progeny, the indemnification clause here includes a provision to purchase general liability insurance for bodily injury in addition to a comprehensive provision with broad language to hold Luepke "harmless and indemnified at all times from and against any and all claims, demands, actions, damages, costs, expenses, and attorneys fees suffered, paid or incurred by [Luepke] on account of any damage or injury to life [or] person … in or about the demised premises." Applying the analysis from those cases, the combination of these two parts of the indemnification provision demonstrates the intent of the parties to defend and indemnify Luepke for his own negligence. Additionally, Timber Creek has not asserted any valid purpose for the indemnification provision that does not include defending and indemnifying Luepke for his own negligent acts. *See **id.*** at 146. We conclude that the parties' agreement embodied in the indemnification provision to purchase general liability insurance and broadly indemnify Luepke evidences the purpose and unmistakable intent of the parties that Timber Creek must defend and indemnify Luepke for Luepke's acts of negligence. *See **Mikula***, 281 Wis. 2d 712, ¶36.

¶41 Those obligations include that Timber Creek is required to defend Luepke against Ramos' claim. It is undisputed that Ramos' complaint against

18

Luepke alleges that Luepke negligently maintained the premises of the property. Those allegations meet the conditions of the indemnification provision because those constitute an "action[] … suffered, paid or incurred by [Luepke] on account of any damage or injury to life [or] person … in or about the demised premises." As a result, under the terms of the indemnification provision, "[Timber Creek] at its own expense agrees to defend any such action or actions on behalf of [Luepke], including claims and causes of action at common law, or arising under statute." This court has stated that "an indemnitor is 'obligated to honor its duty to defend upon [an indemnitee's] tender of a claim against it for acts or omissions that were arguably within the purview of the [agreement].'" *Fabco Equip., Inc. v. Kreilkamp Trucking, Inc.*, 2013 WI App 141, ¶7, 352 Wis. 2d 106, 841 N.W.2d 542 (quoting *Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2012 WI 70, ¶60, 342 Wis. 2d 29, 816 N.W.2d 853). Accordingly, Timber Creek has breached its obligation to defend under the indemnification provision by failing to accept Luepke's tendered defense.

¶42 Timber Creek contends that, looking at the lease as a whole, the indemnification provision was not intended to cover Luepke's own negligence. Timber Creek contends that, when the indemnification provision and a separate attorney fees clause in the lease are read together, "it is clear that the lease contemplated Luepke paying his own attorney for actions that were his fault." According to Timber Creek, a conflict between the attorney fees clause and the indemnification provision causes the attorney fees clause to be more specific, and it controls in these circumstances. That clause in the lease states in full:

> [Timber Creek] shall pay all attorney's fees and expenses of [Luepke] incurred in enforcing, or in preventing a breach of any of the obligations of [Timber Creek] under this lease, or in any litigation or negotiation in which [Luepke] shall without fault become involved

> through or on account of this lease, or on account of [Timber Creek]'s acts or debts.

Timber Creek's argument is less than clear on this point, but it appears to rely on the following language in that attorney fees clause: "[Timber Creek] shall pay all attorney's fees and expenses of [Luepke] incurred … in any litigation … in which [Luepke] shall without fault become involved … on account of [Timber Creek's] acts." But, even if we read the language of that clause as Timber Creek contends, that does not as Timber Creek argues, in effect, cancel out the indemnification provision that requires Timber Creek to defend in these circumstances. Timber Creek's argument fails for at least two reasons. First, Timber Creek makes only a conclusory assertion, and makes no developed argument, explaining why the attorney fees clause is more specific than the indemnification provision and therefore controlling on the issue of Timber Creek's requirement to defend Luepke in this action. We need not consider undeveloped arguments. *See **State v. Pettit***, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992). Second, there is no conflict between the attorney fees clause and the indemnification provision even as Timber Creek reads those. The attorney fees clause calls for Timber Creek to pay Luepke's attorney fees if Luepke is sued based on Timber Creek's acts when Luepke is without fault. The indemnification provision calls for both defense and indemnification from Timber Creek for Luepke, even for Luepke's own negligence, when such negligence results in "damage or injury to life [or] person … in or about the demised premises." Those parts of the lease provide separate areas of protection for Luepke and are not inconsistent. That Luepke negotiated, and received, broad protection under both of those parts of the lease does not lead to the conclusion that the indemnification provision is without effect in these circumstances.

20

¶43 In sum, we agree with the circuit court that the indemnification provision requires Timber Creek to indemnify Luepke for Luepke's negligent acts, if any, and to defend Luepke in Ramos' action.

### IV. Attorney Fees.

¶44 Finally, Timber Creek appeals the circuit court's ruling that Luepke is entitled to his reasonable and actual attorney fees and costs "incurred to date in defending the lease." Timber Creek argues that the circuit court erred because there is no evidence in the record to support the circuit court's factual determination that Luepke expended funds and paid attorney fees to enforce the terms of the lease. Acuity responds that the total attorney fees and expenses has not yet been determined because Timber Creek continues to dispute the circuit court's ruling.

¶45 Consistent with the attorney fees clause quoted above, and based on Timber Creek's breach of the lease by failing to defend Luepke in this action after the tender, the circuit court correctly determined that Luepke must be reimbursed by Timber Creek for any attorney fees and costs incurred by Luepke in enforcing Timber Creek's defense and indemnification obligations under the lease. As a result, Timber Creek must pay Luepke's incurred attorney fees and expenses once the final total of any such fees and expenses is determined, including for this appeal.

¶46 Before concluding, we emphasize that the circuit court ordered only that Luepke's incurred attorney fees and costs be paid by Timber Creek. The court did not order that any of Acuity's incurred attorney fees and costs in this action be reimbursed by Timber Creek. To the extent Acuity argues in this appeal that the attorney fees and costs it has paid in this action must be reimbursed by

Timber Creek, we reject that argument because it is not before us. The circuit court's order does not state that Acuity will have its attorney fees and costs reimbursed, and Acuity has not filed a cross-appeal of that order. ***Thomsen v. Wisconsin Emp. Rels. Comm'n***, 2000 WI App 90, ¶2 n.2, 234 Wis. 2d 494, 610 N.W.2d 155 (stating that a respondent must file a cross-appeal if seeking a modification of the circuit court's order or judgment); *see also* WIS. STAT. § 809.10(2)(b).

## CONCLUSION

¶47    For the foregoing reasons, the order of the circuit court is affirmed.

*By the Court.*—Order affirmed.

Not recommended for publication in the official reports.